54   439
25a  256

54   439
136  217
35a  557

54   439
137  233

54   439
155  136

54   439
51a  233

## CANDEE, SWAN & CO.

### *v.*

## DEERE & CO.

1. TRADE MARK—*definition thereof.*  A trade mark is the name, symbol, figure, letter, form or device, adopted and used by a manufacturer or merchant in order to designate the goods he manufactures or sells, and distinguish them from those manufactured or sold by another, to the end that they may be known in the market as his, and thus enable him to secure such profits as result from a reputation for superior skill, industry and enterprise.

2. SAME—*requisites of a trade mark.*  A trade mark must be so clear and well defined as to give notice to others, and must not be deviated from at the suggestion of whim or caprice.

3. It must be attached to the article manufactured, in such a way as to be reasonably durable and visible.  The mere declaration of a person, however long and however extensively published, that he claims property, in a word, as his trade mark, can not even tend to make it his property.  It is the *actual use* of the trade mark, affixed to the merchandise of the manufacturer, and this alone, which can impart to it the element of property.

4. So where a manufacturer of plows at Moline, Illinois, claimed as a trade mark the words "Moline Plow," which he used in his circulars, price lists and advertisements, but did not place them upon the articles manufactured, it was *held*, this requisite being absent, he had no such exclusive right to their use as would prevent other manufacturers of plows at that place from employing them in the same mode.

5. SAME—*in what a trade mark may or may not consist.*  Moreover, the plows in reference to which the words "Moline Plow" were used, being manufactured in the town of Moline, the words were regarded as a generic term, and as indicating the place at which they were made, and no property could be acquired in words of that character, as constituting a trade mark, to the exclusion of others in their use in connection with plows made by them at the same place.

6. One manufacturer of an article at a particular town, whose wares have gained celebrity, can not appropriate as his own, to the exclusion of every other person in the same place, the name of the place, and thus prevent him from designating his manufactures as of the place where they were actually made.

7. So where a manufacturer of plows at the town of Moline, had been accustomed to brand or stencil upon the beams of his plows, under his

name, the words "Moline, Ill." and subsequently another manufacturer of plows in the same place, branded plows which he manufactured there, under his own name, with the same words, "Moline, Ill." it was held there was no violation of any right in the former, because he could not acquire any property in those words which only indicated the place at which the plows were made.

8. The name and address of the manufacturer, combined, may constitute a trade mark which will entitle him who adopts it to protection in its exclusive use, but neither the name nor the address, singly, will suffice to be effectual for protection—both must be used.

9. And it has been held that where a place has become noted by reason of the excellence of an article manufactured there, another person may choose such place for the manufacture of the same article, for the reason the name has become known in the markets, and with the intention of introducing that name as a part of the description of himself and his goods.

10. SAME—*as to the use of letters and figures.* Although by the long continued use of certain letters, figures, words, marks or symbols, which do not, of themselves, and were not designed to indicate the origin or ownership of the goods to which they are attached, but only to designate the nature, kind or quality of the different varieties of the article, and because so marked the goods have become known as those of the manufacturer who first used them, such fact can not alter the original meaning of the words or symbols, or the intent with which they were first used, as denoting the name of the thing, or its general or relative quality, or take from others the right to employ them in the same sense.

11. So where a manufacturer of plows placed upon them, for the purpose of designating the size, shape and quality of the different plows upon which they were respectively branded, the letters and figures in their combinations as follows: "A No. 1, A X No. 1, No. 1, X No. 1, No. 3, and B No. 1," it was *held,* he had no exclusive right to their use for such purpose, but they could be used by any other manufacturer of plows, in the same combinations, to indicate like varieties of the same article.

12. SAME—*of the character of imitation which is prohibited.* A similarity between two trade marks used by different manufacturers for their goods, although of such a character as to induce a belief in the mind of the public that they belong to, and designate the goods of the same manufacturer or trader, is not, of itself, sufficient ground for a prohibition of the use of such trade mark by him who did not first adopt it. That similarity, to entitle the originator to the protection of the law, must be such as to amount to a false representation, not alone that the two articles bear the same origin, but that the goods to which the simulated mark is attached are the manufacture of him who first appropriated the trade mark. In this consists the essence of the wrong done.

13. In this case the party alleging a violation of his trade mark upon plows manufactured by him at the town of Moline, Illinois, had branded or stenciled on the beams, the words, "John Deere," in large, heavy capitals, in black paint, on the segment of a circle, with the words, "Moline, Ill." in a straight horizontal line underneath, in smaller capitals in like black paint, with a dash or flourish between them.   The brand or mark upon the other plows, which constituted the alleged violation, was this: the words "Candee, Swan & Co." in smaller capital letters, on a segment of a circle at least two inches longer than that of "John Deere," and the address, "Moline, Ill." in still smaller capital letters, on a straight, horizontal line underneath, and a dash between them: *Held,*  that while there was some resemblance between these brands, there was no such similarity as would show that "Candee, Swan & Co." intended thereby to sell their plows as plows manufactured by "John Deere."

14. SAME—*degree of proof required.*  Where a person seeks to establish a trade mark, the proof must be clear, leaving the question beyond a reasonable doubt.

APPEAL from the Circuit Court of Rock Island county; the Hon. W. W. HEATON, Judge, presiding.

The opinion states the case.

Mr. JAMES GRANT, Mr. C. WHITAKER and Mr. IRA O. WILKINSON, for the appellants.

It appears by the record that the appellees, manufacturers of plows in the city of Moline, in this State, used, for the purpose of designating the size, shape and quality of the different plows upon which they were respectively placed, the letters and numbers following: "A No. 1, A X No. 1, No. 1, X No. 1, No. 3, and B No. 1," in which they claim a property as being their trade marks.

We deny that a property can exist in those letters and figures, used in those or any other combinations. *Amoskeag Manufac. Co.* v. *Spear,* 2 Sandf. S. C. 599.   A mere mark or symbol which can be used by one with as much propriety as another, can not become a trade mark.   Ibid. and *Stokes* v. *Landgraff,* 17 Barb. 608, also, *Pierce* v. *Franks,* 10 Lon. Jur. R.; *Williams* v. *Johnson,* 2 Bosw. 1; Upton on Trade Marks, 26;

*Collins* v. *Cowen*, 3 Kay & Johns. 428. The mark must denote the origin or ownership of the goods, and not the kind or quality. Upton on Trade Marks, 98, 99.

The appellees also placed upon their plows the words, " Moline, Ills." and claim that as their trade mark.

These words are put on their plows to show where they are made, and are used by all parties doing business in Moline, for this purpose. It is immaterial whether words, or letters, or other signs are used, if. the simple fact they are used to indicate or declare, is a truth that other manufacturers or dealers have an equal right to express and communicate; there can be no property in such marks. *Amoskeag Manufac. Co.* v. *Spear*, before cited; *Brooklyn White Lead Co.* v. *Masury*, 25 Barb. 418; *Howe* v. *Howe Machine Co.* 50 Barb. 236; *Burgess* v. *Burgess*, 17 Eng. Law and Eq. 260.

When words or names are in common use, the law does not allow them to be appropriated so as to become the subject of property. *Newman* v. *Alvord*, 49 Barb. 591; *Burnett* v. *Phalon*, 9 Bosw. 192; *Burgess* v. *Burgess*, 17 Eng. Law and Eq. 257; *Wolfe* v. *Goulard*, 18 How. Pr. 64; *Corwin* v. *Daly*, 7 Bosw. 222; *Binninger* v. *Wattles*, 28 How. Pr. 206.

A party can not appropriate, as a *trade mark*, a sign or symbol, which, from the nature of the fact which it is used to represent, others may employ with equal truth, and therefore have an equal right. to employ, for the same purpose. *Farina* v. *Silverlock*, 39 Eng. Law and Eq. 514, and *Amoskeag Manufac. Co.* v. *Spear, supra.*

If those who are charged with having violated the alleged right, were not doing business in the town of Moline, the case might be different. See, also, the following authorities : *Perry* v. *Tufft*, 6 Beavan, 66; *Fetridge* v. *Wells*, 13 How. Pr. 385; *Partridge* v. *Menck*, 2 Barb. Ch. 101; *Pidding* v. *How*, 8 Simons, 477.

A manufacturer can not acquire a special property in an ordinary term or expression, as his trade mark, the use of which

as an entirety, is essential to the correct and truthful designation of the particular article or compound. *Town* v. *Stetson*, 5 Abb. Pr. N. S. 218; *Faber* v. *Faber*, 49 Barb. 357.

Where two firms of the same name are carrying on the same kind of business in different places, one can not acquire a trade mark in its name, as against the other. *Rogers et al.* v. *Tainter*, 97 Mass. 291.

The appellees can have no property in the words "Moline Plow," because those words are not marked, branded or put upon the plows made by them. Bouv. Law Dic. title Trade Mark; Upton on Trade Marks, 99, 179. The words were intended to denote the name of the plow, and not that it was made at a particular place, or by a particular person. *Singleton* v. *Bolton*, 3 Doug. 393; *Canham* v. *Jones*, 2 Ves. & Beames. 218; Upton on Trade Marks, 24, 25, 110, 116, 122; *Thomson* v. *Winchester*, 19 Pick. 214; Dan. Ch. Prac. 1754; Eden on Injunc. 226; *Fetridge* v. *Wells*, 13 How. Pr. 385.

Plows made by other parties in Moline are, in truth, as much "Moline Plows," for that reason, as those made at the same place by appellees. *Newman* v. *Alvord*, 49 Barb. 588; *Wolfe* v. *Goulard*, 18 How. Pr. 64.

Mr. JOHN B. HAWLEY and Mr. GEORGE W. PLEASANTS, for the appellees.

The appellees are manufacturers of plows in the town of Moline, and have placed upon those articles the name of "John Deere," in plain, black, capital letters, in a circular line, and also the words "Moline, Ill." in the same character of letters, in a straight, horizontal line underneath. This mark has been uniformly used by them, in that mode, from the year 1852 to the present time, 1870. They had affixed to their plows those words, constituting a name, mark or device, indicating their origin and ownership, and distinguishing them from all others of the same general kind; and that is a trade mark. Upton on Trade Marks, 99. Although others had used the words "Moline, Ill." prior to their adoption by appellees, yet, having

abandoned their business, and appellees continuing the use of the words, the latter, as against the former, have all the right to their exclusive use that priority or originality could give. Upton on Trade Marks, 26–7, 47 ; *Corwin* v. *Daly,* 7 Bosw. 222.

The appellees have also, for many years, employed certain combinations of letters and figures, branded or stenciled upon their plows, intended to distinguish the different sizes, forms and patterns of their make, and those combinations of letters and figures were original with appellees. And almost from the beginning of their enterprise appellees had advertised their plows, and sold them as the " Moline Plow," to designate their origin and distinguish them from those made by others.

As to the device of the general brand, the name and address, we contend it complies with all the essential requisites to an acquisition of an exclusive right to their use. Upton, 102–3, 113 ; *Howe* v. *The Howe Machine Co.* 50 Barb. 236 ; *Newman* v. *Alvord,* 49 ib. 591.

It is not essential, as seems to be held in *The Amoskeag Manufac. Co.* v. *Spear,* 2 Sandf. S. C. 599, and other cases, in order that appellees should have their remedy, that fraud, in fact, should be shown. *Burgess* v. *Burgess,* 17 Eng. Law and Eq. 257 ; *Sykes* v. *Sykes,* 3 B. and C. 541 ; *Rogers* v. *Norvill,* 5 Mann. Gr. & Scott, 109 ; *Croft* v. *Day,* 7 Beavan, 84.

The right of protection is not necessarily dependent upon the right to the exclusive use of the words or names, but will be afforded where the imitation is such, notwithstanding the differences, as to manifest a design, or be likely to deceive the public as to the origin or manufacture of the goods. *Amoskeag Manufac. Co.* v. *Spear,* 2 Sandf. S. C. 599 ; *Corwin* v. *Daly,* 7 Bosw. 222 ; *Williams* v. *Johnson,* 2 Bosw. 1 ; *Taylor* v. *Carpenter,* 2 Sandf. Ch. R. 611 ; *Coates* v *Holbrook,* ib. 586 ; *Clark* v. *Clark,* 25 Barb. 76 ; *Fetridge* v. *Wells,* 4 Abb. Pr. R. 144 ; Upton on Trade Marks, 97, 137–8 ; *Brooklyn White Lead Co.* v. *Masury,* 25 Bosw. 416 ; *Burnett* v. *Phalon,* 9 Bosw. 197 ; *Bradley* v. *Norton,* 33 Conn. 165.

It is not necessary, to give the right to a trade mark, that it should be claimed as such—it is its adoption and use, for the purpose of indicating origin and ownership, that give the right. *Collins* v. *Cowen*, 4 Kay & Johns. 428 ; Upton on Trade Marks, 46–7, 179 ; *Stokes* v. *Landgraff*, 17 Barb. 608.

If a likeness is calculated and likely to deceive, it will be enjoined, although accidental—that circumstance being material only upon the question of damages and costs. *Millington* v. *Fox*, 3 Myl. & Cr. 338 ; *Crawshay* v. *Thompson*, 4 Mann. & Gr. 357 ; *Coffeon* v. *Bremton*, 4 McLean, 516.

As to the letters and numbers and combinations thereof, used on the different styles, forms and patterns of the plows, we do not admit that such marks, though not trade marks *per se*, may not, by the manner of their use, be so related and auxiliary to such as are, as to partake of their character and right to protection.    Upton, 208, 214 ; *Gout* v. *Aleplogue*, 6 Beav. 69; *Corwin* v. *Daly*, 7 Bosw. 222 ; *Gillott* v. *Esterbrook*, 47 Barb. 455 ; *Merserole* v. *Tynberg*, 4 Abb. Pr. N. S. 410 ; *Town* v. *Stetson*, 5 Abb. Pr. N. S. 218.

In reference to our claim to protection in the use of the words " Moline Plow," it is objected that those words are not placed upon the plows, but only used in circulars, price lists and advertisements.   But the word " Moline" is on them, and the proof shows that by reason of that word so placed upon them, aided by advertisements in divers forms, the plows are known to all as " Moline Plows."   We cite on this question, *Howe* v. *The Howe Machine Co.* 50 Barb. 236 ;   *Ames* v. *King*, 2 Gray, 379.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was a bill in chancery, exhibited in the Rock Island circuit court by John Deere and others, claiming to be manufacturers of plows at Moline, in this State, known by the trade and by the community, wherever sold and used, as the " Moline Plow," and against Candee, Swan & Co. other manufacturers

of the same implement, at the same place. The object of the bill was to enjoin defendants from pirating their trade mark, to their injury, and from making, branding and selling their plows as the Moline plow, and for an account.

The bill alleges that complainants have, at great expense, and through the large experience, skill and ingenuity, and untiring energy and industry of John Deere, brought their plows to great perfection, and have been made acceptable to the public; that they are made of various qualities, sizes and patterns, and distinguished by different names, letters and numbers, originated and applied to them respectively and exclusively, and placed upon their plows by John Deere and his associates; that they are sold, used and known by the trade and community, wherever they are sold and used, as the "Moline Plow," and not by the name and style of the manufacturers, and are so advertised in newspapers, circulars, price lists and agricultural works and periodicals, and by their agents and others selling them, and that; upon all of their plows, there is branded or stenciled upon the sides of the beam, under the names of the manufacturers, or some one of them, which differed at different times, in a straight horizontal line, and in plain capital letters, the words "Moline, Ill.;" that, by this name, the Moline plow has acquired a national reputation, and is in great favor, and commands a ready sale at a fair profit. It is further alleged, that until the last year, no other plows than those manufactured by complainants, were ever branded, stenciled, advertised, sold, used, or in any manner known as the "Moline Plow," nor until the last year was there any other plow factory at Moline than that with which John Deere has been connected; and complainants say that they have succeeded to all the rights that ever pertained to John Deere and his associates in this manufacture and business, and hoped they might continue to have and enjoy the benefits and advantages of the reputation so acquired, and of the name and trade marks so given and used, exclusively, and without molestation. The

bill then charges, that the defendants, sometime in 1866, commenced the business of manufacturing plows at Moline, and envying the reputation of the plows made by complainants, and their business and prosperity based thereon, and wrongfully intending and fraudulently contriving to take advantage of the same, to their own profit, and to the injury of complainants in their business, and of their agents and customers, and to deceive and impose upon the community in that behalf, have hitherto, and are now, manufacturing plows of different sizes and patterns, as near like those manufactured and sold by complainants in size, pattern and finish, as they could or can, and have branded and stenciled them on the sides of the beams, under the name of Candee, Swan & Co. in a straight horizontal line, and in plain capital letters, the words " Moline, Ill." in all respects as the same are branded or stenciled on complainants' plows, and have advertised them in their circulars and price lists as the " Moline Plow," precisely as those manufactured by complainants, and distinguish the different sizes and patterns of the plows of their make, corresponding with those of complainants, and advertise them to the trade and community by the same names, letters and numbers, respectively, as complainants; complainants then show their trade circular or price list, used and circulated by them since its date, viz.: July 1, 1866, and also make an exhibit of defendants' trade circular or price list, dated August 1, 1866, and charge that it was fraudulently intended by defendants, through its similarity in general, and in detail, to that published by complainants, to deceive buyers, and to affix to defendants' manufacture the reputation earned and long enjoyed by complainants, and thereby secure a sale as ready and profitable as complainants' plows have met with, and this to the injury of complainants; and they charge that defendants, by this wrongful and fraudulent imitation and use of the trade marks of complainants, have already greatly injured them in their business, and are preparing further to injure them in the same way.

The prayer is for an answer, not under oath, and for an injunction " wholly enjoining and restraining defendants from advertising, using or imitating the trade marks, names, letters, numbers, figures and words of complainants, or any or either of them, or from advertising, representing, or in any manner calling or designating the plows, or any of them, manufactured by defendants, the ' Moline Plow,' and from branding, stenciling, or in any manner marking or placing thereon the words ' Moline, Ill.' in imitation of those words as placed on complainants' plows, or otherwise." They also pray that an account may be taken of the amount of damages sustained by complainants, by means of these several wrongful acts of the defendants, and for general relief.

The defendants put in a joint and several answer to the bill, in which they allege that Moline, prior to the advent of John Deere, was a manufacturing town, where various kinds of manufacture were then made ; that contemporaneous with Deere's coming to the place, and commenced making plows, there were two plow makers there, namely : one Berry and one Kinsey, whose plows were known as the " Moline plows," and were marked, branded or stenciled with the maker's name, in a circular form, on the beam, and " Moline, Ill." in a straight line underneath ; that among the trade, and with people who buy and sell them, all the manufactures of Moline pass by the name of Moline—as Moline plows, Moline buckets, tubs and pails, Moline fanning mills, Moline pumps, etc., and was so done before John Deere came to the place, but that no manufacturer has ever undertaken to assume to himself or his business the name of " Moline, Ill." as a trade mark ; that the name of the town has been always used, and now is used, by all its manufacturers, not as a trade mark, but to show the place where the article was made ; that when Deere came to Moline and made plows in company with Tate, they made a plow called by the public the " Grand De Tour Plow ;" that Berry's plows were called the " Moline Plow," a part of which Deere and Tate adopted, that is, the wrought iron land side.

They deny that it is through the skill of John Deere and his energy the plow has been improved, or that it is preferable to those manufactured at other establishments, and that the improvements made in the name of Deere are due to the skill, experience and ingenuity of Robert Tate and one of the defendants, Fryburg; they deny that Deere originated the system of numbers and letters and names placed on their plows, and insist that they are used to designate particular qualities of goods, and that it has been common to all manufacturers; that the term "clipper," as applied to a plow, was borrowed by Deere and Tate from a plow brought to Moline by one Wheelock, made by Price, of Chicago; that the numbers A 1 X 1, etc. marked on Deere's plows, are so marked to designate their quality, and were borrowed by him, and copied by Mr. Hemenway for him, from the price list of Ruggles, Nourse & Mason, plow makers in Worcester, Massachusetts; and they deny that all complainants' plows have been, or are, sold and used as the "Moline Plow," and not by the name and style of the respective manufacturers; they allege that neither Deere and Tate, nor John Deere, nor Deere & Co. ever branded, stenciled, advertised or sold any of their plows as the "Moline Plow," or as a "Moline Plow," until after defendants began the manufacture in Moline; and they deny that John Deere, as the successor of Deere & Tate, or Deere & Co. as the successors of John Deere, ever acquired any right to any trade mark for their plows, or ever used or claimed one until after defendants began their operations in Moline, or ever held themselves out to the public as being the purchasers of any such right, nor did any one of the complainants claim the name of the town of "Moline, Ill." as their trade mark, or any other trade mark, until after defendants commenced their business. They deny all intention to do complainants any wrong, or to deceive or impose upon the community by their manufacture of plows. Defendants claim great credit for Andrew Fryburg, one of the firm of "Candee, Swan & Co." while he was in the service of Deere, as having suggested many of the improvements for

which John Deere has the credit. They admit they advertise and sell certain plows of different sizes and patterns, like those advertised by complainants, but, in their opinion, better plows, and with improvements of their own invention, of great utility, rendering them superior to those of complainants, and they admit they do brand and stencil their plows on the beam with the name of "Candee, Swan & Co. Moline, Ill." in the same place and form as the name "John Deere, Moline, Ill." is branded on the plows made by them, and they admit that they have advertised their plows in circulars and price lists, and caused them to be extensively known, with improvements of their own, as a Moline plow, and made in the same form as the plows made at Moline by John Deere, or Deere & Co. and in their circulars have added a clause as follows: "We feel warranted in saying that the reputation of the 'Moline Plows' will not suffer at our hands. Our Mr. Fryberg, for twelve years, had charge of the iron department of Mr. Deere's shop, and to his skill as a mechanic, they, in a great measure, owe their justly merited prosperity. We ask a careful examination and comparison of our plows with other 'Moline plows,' and would respectfully solicit patronage." They further say, that this form of branding the name of the maker in a circular form, and the place where made in a straight line underneath, was common among plow makers before John Deere made plows; that the plow from which Deere & Tate copied their plow, was first made by a man in Princeton, improved by a man in Galesburg, improved on his by Robert Tate, Deere's partner, and improved by Fryberg, the foreman of Deere, and that plow was branded in the same way. They admit the use of the same names, letters and numbers to designate the quality and size of their plows as complainants use; that complainants borrowed them from other plow makers; that they are not used as a trade mark, or to induce a belief that defendants' plows are made by complainants.

In accounting for the similarity of their circulars with complainants', they say that complainants' was issued July 1, 1866,

and theirs on August 1, thereafter; they were both at the same printing office, and the printer put them in like form; that Deere & Co. took to the printer the price list of a Peoria factory, and required their circular to be of like form to the Peoria list; and they aver that their price list distinctly declares that they make and sell their own plows, put their own names on them, and challenge competition with the manufacture of complainants, and they deny any intention wrongfully to use any trade mark or marks of complainants, or that they have been, or will be, injured thereby. They, further averring, say that in a circular issued by complainants, in December, 1866, they, for the first time, claimed a trade mark, and that the trade mark was "John Deere, Moline, Ill." not the "Moline Plow;" that such a trade mark as the "Moline Plow" was never claimed by any circular, hand bill, price list, or advertisement, or brand on their plow, before the defendants issued their circular and branded their plows. The defendants, in conclusion, say that complainants have neither a patent, invention nor monopoly upon the plows made by them, on which they use certain names, letters and numbers, to designate the quality of their plows, and on which they brand, on the beam, in a circular form, like other plow makers, in the same place, form and size, the name of "John Deere," with the place, "Moline, Ill." in a straight line underneath; that they, the defendants, make similar plows, and lawfully use similar names, letters and numbers to designate their quality, and brand their plows with the name of "Candee, Swan & Co." in a circular form on the beam, with the words "Moline, Ill." in a straight line underneath, as they lawfully may, and sell them as "Moline, Ill." plows, made by them, and not by Deere & Co.

A replication was put in to the answer, and much testimony taken by deposition, and many exhibits produced, and the cause fully heard, and a decree pronounced, of which the following is the substance:

And the court, being now fully advised in the premises, doth find that the complainants' said bill of complaint, and

the matters and things therein contained, are true; and the said complainants are entitled to the exclusive use, as a trade mark, in the manufacture and sale of plows, of the words " Moline Plow," and also to the various letters, figures, numbers and combinations, as used and applied by complainants, and as set forth and contained in " Exhibit A," attached to complainants' said bill, and used by complainants to designate the various sizes, shapes and patterns of plows manufactured and sold by them.

It is, therefore, ordered, adjudged and decreed, by the court, that the said defendants, and each and every of them, their agents and servants, be forever restrained and enjoined from in any way calling or advertising themselves as " The Moline Plow Company," or " Moline Plow Co." or similar words, and from advertising, calling, selling or placing upon the plows made, or to be made, by them, or any or either of them, the name of " The Moline Plow," or " Moline Plow," or " Moline Plows," or other words or names, in imitation of the said trade mark of said complainants, or any part thereof, or in any way or manner using the word " Moline," either upon their plows or in advertising the same, as in any way designating, pointing out or indicating the manufacture of defendants, or in any other way, except in connection with such word or words as shall, and shall only, point out and designate the place where the defendants manufacture plows.

And that they also be forever restrained and enjoined from, in any manner, imitating said complainants in advertising, selling, using or placing upon any plow or plows manufactured, or to be manufactured, by said defendants, or any or either of them, any of the letters, numbers, or figures, or combinations, as set forth and contained in complainants' " Exhibit A," attached to the bill of complaint herein, and placed upon the various plows manufactured and sold by the complainants, and by which they are advertised and sold by them, and used and applied by them to indicate the various sizes, shapes and patterns of such plows; and that they, and each and every of

them, be forever restrained and enjoined from branding, stenciling or otherwise placing upon the plows made, or to be made, by them, or any or either of them, the words " Candee, Swan & Co." or other words, in a circular form, in imitation of the complainants' brand, upon the beam of any such plow or plows, over the words Moline, Illinois, or any abbreviation of such words, or either thereof.

It is further ordered that defendants pay the costs of this suit.

To reverse this decree, the defendants appeal.

We have been thus particular in setting out this case, as it is *novus hospes* in this court, and is confessedly one of very great importance, not to these parties litigant only, but to the whole community. The case itself has been most elaborately prepared and ably argued, and has received all the consideration we are capable of bestowing upon it. We have examined the testimony, voluminous as it is, and consulted all the cases to which reference has been made, on both sides, and are prepared to announce the conclusions we have reached.

As preliminary, it will be well to state, that the principal complainant in the bill, John Deere, who is acknowledged to be, in fact, the head of the concern, first commenced the manufacture of plows as early as 1838 or 1839, at a small village called Grand De Tour, on Rock river, and was then associated in business with one Andrews. It was carried on successfully for several years, and the " Grand De Tour" plow became known and appreciated far and near. This place, not possessing all the necessary advantages, or affording " scope and verge enough " for the active energies of Deere, he removed, in 1848, to Moline, at the head of the upper rapids of the Mississippi river, even then favored by an abundant water power, and in a region of country unsurpassed for beauty and fertility. He found the field there comparatively unoccupied, no workmen in plows there but Cyrus Kinsey and Daniel P. Berry, in a small way, both of whom were soon absorbed by Deere, and both

454        CANDEE, SWAN & CO. *v.* DEERE & CO.   [Sept. T.,

Opinion of the Court.

abandoned their own shops to labor for him.   Soon a partner-
ship was formed between Deere and Robert N. Tate and John
M. Gould, in the manufacture of plows, on quite a large
scale for that day, and in that locality.   Afterwards, Charles
Atkinson was taken into the firm, and the firm name was Deere,
Tate & Co.   Soon he retired, and Mr. Gould also, and the
firm name was changed to that of Deere & Tate.   But, who-
ever composed the firm, John Deere was the head, and by his
energy, and industry, and perseverance, he brought the busi-
ness up from one requiring, at the commencement, ten or fifteen
hands, to one requiring now one hundred or more, and his
manufactures sell all over the country.   In fact, Deere and his
associates, whoever they may have been, have enjoyed, for more
than twenty years, the monopoly in this manufacture, at this
favored locality.

The works under his management have greatly prospered,
and the machine so indispensable to our prosperity has been
greatly improved by him—not, perhaps, by applying original
conceptions of his own mind to any part of it, but by careful
study of the labors of others, and, with unerring judgment,
adapting them to his own.   Thus, in his early advent to
Moline, he took from Berry the idea of a wrought iron land
side, the use of which has proved to be superior to the one of
cast iron which he was constantly using; so he obtained the
shape of the mould board from May's " Diamond " plow, and
used steel for the same, because it was on other plows, and had
the preference over any other material which he was using.
He did not hesitate to adopt the shape of the beam in use by
Ruggles, Nourse & Mason, of Worcester, Massachusetts, and
the idea of numbers and figures to designate quality, shape and
workmanship from the same.   The name he bestowed upon
one of his favorite plows was applied to a plow made in Chi-
cago, and sold by Wheelock to Deere, called the " Clipper."

In short, no apparent improvement was unnoticed by him,
and he was not slow to apply them all to his own manufacture
and thus incorporate them.

Mr. Tate, the former partner of Deere, and, we should judge from his testimony, a man of observation, some mechanical skill, and well informed, generally, and particularly. upon the subject of plows, says the history of this plow goes back to 1841. A person by the name of Hitchcock commenced what he called the Diamond plow, in Princeton, Bureau county. Afterwards, May, of Galesburg, manufactured a plow in shape nearly the form that is manufactured now. This is the earliest he recollects of seeing a steel mould board. The share and mould board were combined at that time, and May was the first man who laid any claim to the improved steel plow. There is no improvement on the May steel plow as made in 1843, or later, perhaps, up to this time. The plows afterwards made at Palestine, in Lee county, by a person named Doan ; afterwards at Grand De Tour by W. Denney and Deere and Andrews ; afterwards in Moline by Deere, Tate and Gould in the fall of 1848 ; afterwards by Buford and Tate in 1856—the working models are all copied strictly after the May plows. While at Grand De Tour we borrowed the May plow and copied its improvements in 1847. I essentially consider May the sole constructor, in form, of the Western steel plow. Connected with the Moline plow there is nothing original. The beam and handle are essentially the beam and handle used by Ruggles, Nourse & Mason. The cast block intended to give form to the mould board we copied from the Evans plow, of Galena. The clevis we purchased as made in the east, by Warner, for Ruggles, Nourse & Mason and others. We introduced then what we called the muley share, which we copied from the " Occidental," a plow brought to Moline. We applied the muley share to one plow in Moline in the spring of 1850.

The testimony of this witness, as well as that of others, tends to show that Deere was not the inventor of any material part of his plow, and that his great recommendation and praise is, that he had the sagacity to discern to what profitable use the inventions of others could be applied, and by a well directed judgment he has constructed a plow not inferior to any in use

in our wide-spread agricultural community, all which entitles him to as much credit as if an original inventor.

But the question arises, has he secured a trade mark for his plow, the pirating of which to his injury is deemed unlawful? To decide this question, we must first understand what is meant and intended by a " trade mark," and how it is to be known. There are but few elementary treatises on this subject. That a trade mark is a legal possession has been recognized by courts for many years, but its protection by courts of equity is of quite modern origin. A trade mark is defined in Bouvier's Law Dictionary, to be a symbol, emblem or mark which a tradesman puts upon, or wraps or attaches in some way to the goods he manufactures, or has caused to be manufactured. It may be in any form of letters, words, vignettes or ornamental designs.

Upton, in his treatise, and it is the only one we have seen upon the subject, says, a trade mark is the name, symbol, figure, letter, form or device adopted and used by a manufacturer or merchant in order to designate the goods he manufactures or sells, and distinguish them from those manufactured or sold by another, to the end that they may be known in the market as his, and thus enable him to secure such profits as result from a reputation for superior skill, industry or enterprise. Upton on Trade Marks, ch. 1. p. 9.

Assuming these as the proper definition, what portion of them can one claim as his trade mark, and can he have more than one, and must not that to which he lays claim be so clear and well defined, and the right asserted to it, in the same shape and form always, under all circumstances, as to give him an exclusive right, and must it not be in some way attached to the article manufactured so that it shall be exhibited in its whole extent?

A trade mark is similar in some respects to the marks or brands owners of live stock which run at large put upon each one of them. The object of the one is, to distinguish the property bearing it from that of another. In respect to cattle and

swine, it is well known there is great similarity between those of different owners, in color, make, flesh marks and general appearance. The mark or brand usually decides the question of ownership, should a dispute arise thereon. A trade mark denotes the origin of the article. No one man can have more than one mark or brand, and it is required to be recorded. If the owner could have more than one mark by which to distinguish his property, great confusion and uncertainty would be produced, to such an extent as to defeat the object in view. We have found no case where a proprietor has claimed more than one trade mark, and all concur in saying that the mark must be so clear and well defined as to give notice to others, and must not be deviated from at the suggestion of whim or caprice. That it must be attached to the article manufactured, in such a way as to be reasonably durable and visible, is also conceded. It must have a practical existence, not resting in the thought of the owner, but stamped or impressed or attached in some way to the article itself. Our common observation of such articles sold in the shops teaches this, and it is so reasonable as to claim the acquiescence of every one. Of what use is such a mark unless it be visible, and thus operate as a notice to the public? We can perceive none.

It is understood that the published declarations of a manufacturer, that he has adopted a certain word as his trade mark, can lay the foundation, or even aid in laying the foundation, of a right of property in the word, can not be reconciled with recognized principles upon which such property can be acquired, or with the policy of the law in recognizing and protecting the acquisition. It is the *actual use* of the trade mark affixed to the merchandise of the manufacturer, and this alone which can impart to it the element of property. The mere declaration of a person, however long, and however extensively published, that he claims property in a word as his trade mark, can not even tend to make it his property. Upton on Trade Marks, 179.

With these preliminary remarks, we will consider, what do the complainants claim in their bill as their trade mark?

If we comprehend the allegations in the bill on this head, they claim the words "Moline, Ill." stenciled on the side of the beams of their plows, in a straight horizontal line, as their trade mark, and this under the names of the manufacturers, or of some one of them. Complainants then aver that said plows, by their said name of "Moline Plow," have acquired a national reputation, and no plow was sold as the "Moline Plow" by others than complainants, until defendants commenced their manufacture at the same place in 1866, and the complaint is, that they stencil on the beams of their plows, in a straight horizontal line, in plain capital letters, the words, "Moline, Ill." underneath their own names as manufacturers, and sell them as the "Moline Plow."

Complainants refer to their circular, exhibit A. to sustain their allegations. That is headed, "Circular." "Deere & Co's Moline Plow Factory," in German text, or old English, and in the body of it the public are informed that Deere's Moline Plows have, for many years, enjoyed the reputation of being the best plows in the west, etc. This circular is dated Moline, Ill. Sept. 1859, and signed Deere & Co. There is no claim in this of any trade mark.

In appellee's argument their trade mark, or what is claimed as such, is copied in *fac simile*, except as to the size of the letters, and that mark is, "John Deere," in the segment of a circle, and the words "Moline, Ill." in a straight horizontal line underneath, with a dash between them. Their whole argument claims that these words, so arranged, and in this combination, are the trade mark, if any they have, not the words "Moline, Ill." not the words "Moline Plow," but the words as arranged in the copy given by their counsel.

Appellees argue that their name and address upon their plows is a proper trade mark, pure and simple—that it indicates by whom and where the article is manufactured, nothing more, nothing less and nothing else, and so fulfils most completely all the conditions of the law.

This we consider an abandonment of any claim to the words "Moline, Ill." or the words "Moline Plow," as their trade mark, and the mark being a trade mark by being placed on the beam, is a virtual disclaimer of all right to any other, claimed in circulars and price lists. The question is, then, narrowed down to this: Can one manufacturer of an article at a particular town, whose wares have gained celebrity, appropriate as his own, to the exclusion of every other person in the same place, the name of the place, and thus prevent him from designating his manufactures, as of the place where they are actually made? We do not think the cases go to this extent. Though, as Upton says, the simplest case of a trade mark fulfilling the condition of the law, and thereby entitling him who adopts it to protection in its exclusive use, is the name and address of the manufacturer. P. 102. In such a case, no question as to the right to exclusive use can arise. But it must be observed that such trade mark has two constituents—the name of the manufacturer, and the place of his operations or address. Neither, singly, will suffice to be effectual for protection—both must be used. Had appellants adopted this trade mark, or so simulated it as to deceive the public, and with that intent, an injunction might be proper. How is the proof on this point? An exhibit is made of the marks of these parties, as branded or stenciled on the beams. The one is "John Deere," in large, heavy capitals in black paint, on the segment of a circle, with the words "Moline, Ill." in a straight horizontal line underneath, in smaller capitals in like black paint, with a dash or flourish between them. The name of appellants is in smaller capital letters, on a segment of a circle at least two inches longer than that of "John Deere," and the address, "Moline, Ill." in smaller capital letters, on a straight horizontal line, and a dash between them. There is, it is true, a resemblance between these marks, as there necessarily must be, the same lines being used, and the same color of paint, but the names of the respective manufacturers are so different, and the space

occupied by appellants' names so much longer than that occupied by the name of appellees, as to attract the notice of the most casual observer, drawn to it as it would be by the heavier body and larger size of the letters of the name " John Deere," and the names themselves being so very different. No person of ordinary observation could suppose, in looking at appellants' brand, that it was designed to palm off their manufacture as that of John Deere, when it told them, as plain as letters and words can speak, that it was not made by John Deere, or by appellees. Upton, in discussing what is a violation of a trade mark, says, when A adopts or imitates and applies to articles of his manufacture, the name or mark previously used by B as a designation for his productions, the wrong consists in the sale by A of his goods as and for the goods of B. The doctrine is clearly recognized, that no man can have a right to represent his goods as the goods of another, and in many of the cases coming under our notice, it was shown that the party complained of, was selling his manufacture as the manufacture of another. Nothing of that kind is pretended in this case. In the circular of appellants, they distinctly announce that they are not the plows made by appellees, but are " Moline Plows," and claim an examination and comparison with other " Moline Plows," and the testimony shows that on no occasion, and to no person engaged in the trade, were their plows represented to be the workmanship of appellees. They claimed to such that they were " Moline Plows," but superior to the Deere plow, and there is no proof that they are inferior.

Were appellants violating any right of appellees in so representing them?

It is in proof the plows manufactured at Moline by Kinsey, were branded " Moline, Ill." and those made by Berry, in the same manner, and that various articles manufactured at that place are so branded. The words have acquired a generic meaning, and one manufacturer at Moline has the same right to use them that any other manufacturer there has. A case illustrative of this idea is found in 19 Pick. 214, the case of

*Thompson* v. *Winchester*, where it was held, that if the defendant made and sold medicines, calling them "Thomsonian," as a generic term, designating their general character, but did not offer or sell them, nor consign them to others to sell, as and for medicines made and prepared by the plaintiff, and if he made and compounded such medicines of bad materials, with inadequate skill, by means whereof the credit and character of all Thomsonian medicines were brought into disrepute, the plaintiff could recover no damage—no infringement of plaintiff's right is shown.

Appellees have no patent upon any portion of their plows; any one, therefore, has a perfect right to make plows in their exact similitude, even to "the curve of the mould board" and "the tip of the handles"—in the minutest, as well as in the most important points—all have a right to manufacture them, no matter where the maker may reside, and has the right to put the name of the place where manufactured, as well as his own name, on such part of the plows as he pleases, taking care, however, so to use the brand as not to deceive the public, so as not to create a belief that the plow is the manufacture of another.

In appellees' bill they claim the words "Moline, Ill." and "Moline Plow," as words to which they have an exclusive right when used to designate plows, and so the circuit court must have understood it, for the very language of the finding is, that the complainants' bill is true, and that they are entitled to the exclusive use, as a trade mark, in the manufacture and sale of plows, of the words "Moline Plow," also to the various letters, figures, numbers and combinations, as used and applied by them, as set forth and contained in exhibit A, attached to their bill, and used by them to designate the various sizes, shapes and patterns of plows manufactured and sold by them.

The decree is still more comprehensive. It is decreed that the defendants, and each of them, their agents and servants, be forever restrained and enjoined in any way calling or advertising themselves as "The Moline Plow Company," or, "Moline

Plow Co." or similar words, and from advertising, calling, selling, or placing upon the plows made, or to be made by them, or any or either of them, the name of "The Moline Plow," or "Moline Plow," or "Moline Plows," or other words or names, in imitation of the said trade mark of said complainants, or any part thereof, or in any way or manner using the word "Moline," either upon their plows or in advertising the same, as in any way designating, pointing out or indicating the manufacture of defendants, or in any other way, except in connection with such word or words as shall, and shall only, point out and designate the place where the defendants manufacture plows.

The decree further enjoins appellants from using, or placing upon their plows, any of the letters, numbers, or figures or combinations, like those placed upon complainants' plows, and used by them to indicate the various sizes, shapes and patterns of such plows; and they are further enjoined from branding, stenciling, or otherwise placing upon their plows, the words "Candee, Swan & Co." or other words, in a circular form, in imitation of the complainants' brand, upon the beam of any such plow or plows, over the words Moline, Illinois, or any abbreviation of such words, or either thereof.

We are not mistaken, therefore, when we say that the trade mark claimed by this bill, and found by the court, is the words "Moline Plow," to which they are entitled to the exclusive use, and not the words "John Deere," on the segment of a circle, with "Moline, Ill." on a straight horizontal line underneath. The finding and decree follow the bill, and show the same case.

If this, then, be the trade mark, it is of no value, as it has never been affixed by appellees to any plow they have manufactured, or attached to it in any way, and if they had so done, there is not a particle of proof appellants have affixed it to any plow of their manufacture. The law is well settled that no circular, price list or advertisement, no matter how frequently repeated, can constitute a trade mark, and it is only in that way appellees have used, and appellants also using it as a generic

term, which they had a clear right to do.  Is it possible, can it be tolerated for a single moment, that a maker of plows at Moline shall not be permitted to sell his work as a Moline Plow—to advertise them in every form as the Moline Plow? Would it not be the truth, and shall a manufacturer be prevented from publishing to the world where his wares are made ? In what could a contrary notion result but in a monstrous monopoly ?  If, to the exactions committed upon the agricultural portion of our people, by the patentees of reapers and mowers, implements now indispensable, there shall be superadded a monopoly in the manufacture and sale of the plow, at a point so important as Moline, how shall the farmers bear this grievous and oppressive burden?   Shall it be said that because appellants have branded their pumps—which, it appears by the testimony, they manufacture—"Moline, Ill." no other manufacturer of pumps at that place shall so brand his ?   Shall it be said that any man, or association of men, can so appropriate the name of a town where manufactures can be carried on in the most extensive manner, and on a gigantic scale, such will be her increased facilities by the expenditure by the government of large sums of money to that end?   Monopolies are odious, against which the public sentiment has ever revolted, and what can be more odious and oppressive than the monopoly of the manufacture and sale of plows?   If it can be claimed by an association at Moline, it could also be claimed for Peru, Peoria, Chicago, and the various other places at which these implements are largely made.

In a very recent English case, reported in the Albany Law Journal of February 25, 1871, the plaintiffs had been, for many years, manufacturers of starch, at a small hamlet in Scotland called Glenfield, where, it was said, a stream of water particularly suited for making that article, flowed.   Under the name of "Glenfield Starch," their goods had acquired a great reputation.   In 1868 the defendants set up starch works at Glenfield, and sold starch in packets labeled, "C. & Co. Starch Manufacturers, Glenfield."   In color alone those labels resembled those of the plaintiffs, but it was shown that the colors

selected were common to almost all starch makers. *Held,* on bill filed for an injunction, that the defendants were entitled to manufacture starch at Glenfield, and doing so, to describe their goods as made there, and themselves, of that place; that even if they had chosen that place for their works, expressly because the name had become known in the markets, and with the intention of introducing that name as part of the description of themselves and their goods, it was open to them to do so, and therefore, as the labels and inscriptions in no way imitated those of the plaintiffs, an injunction originally granted by Malins, V. C. was, on appeal, dissolved. *Witherspoon* v. *Currie,* Ch. 33, L. T. R. (Law Term Reports) 443; Vol. 3, No. 8 Law Journal, p. 156.

This case is noticed under the article "Trade Marks," and bears upon the case before us. What is to be understood by the closing paragraph is, that starch being put up for market in packages, are labeled in such a way as to constitute a trade mark, and as the defendants' labels did not imitate those of the plaintiffs' except in color, as stated before, there could be no piracy of the trade mark—that did not consist in the word "Glenfield." So in this case, if the trade mark of appellees is as charged in the bill, and as found by the court, there has been no piracy, and the same reasons that induced competition in the manufacture of starch at Glenfield—that starch made there had a great reputation—and that defendants had a right to select that place, on that account, because the name had become known in the market, so here, appellants were justified in commencing their operations at Moline, because the plows manufactured at that place had obtained a great reputation through the exertions of appellees, or of their head, Mr. Deere. Any number of plow makers can go with impunity to Moline and establish there, plow factories, and brand on their plows their own name and the name of the town, and send them broadcast over the country, to the joy of our farmers, and to the common benefit of all.

But the court went, in their decree, to the full extent of the claim of appellees, and decided they had a property in the letters, figures and numbers placed on their plows, with this modification : whereas, it is charged in the bill, that the plows manufactured by complainants have been of various qualities, sizes and patterns, for different qualities and conditions of soil, and for different operations, and distinguished by different names, letters and numbers; and further, referring to exhibit A, their plows are spoken of as of different qualities, sizes and patterns, the court find they are used to designate the various sizes, shapes and patterns of plows.

It is in proof by two of appellees' witnesses, G. W. Vinton, one of the appellees, and C. G. Bryant, that they designated the different sizes, *qualities* and patterns by numbers, from one to nine, inclusive, put on the top of the beam, next to the standard, and as they modified them from time to time to suit the demand, they added numbers and portions of numbers. He also says, "the same letters, figures and numbers appear on defendants' plows, corresponding with those we use, and they appear in the same form, style and appearance, and designate the same style and *quality* of plows as our own." On cross-examination, he says these letters and numbers denote the size, quality, shape and brand of the plows.

Charles G. Bryant says he is familiar with Deere's numbers and figures and combinations, as applied to their plows, and they designate the size, shape and *quality* of the various kinds of plows on their price list, to which they are applied. And on cross-examination, he says makers of plows generally mark them with letters and numbers, or combinations of letters and numbers, to denote the size, shape and *quality* of plows made by them.

That one can not have a property in letters, figures and words used for such purpose, seems to be settled by the authorities.

It was held, in the case of *Stokes* v. *Landgraff*, 17 Barb. 608, referring to *Amoskeag Manufac. Co.* v. *Spear*, 2 Sandf. S. C. R. 599, in respect to words or devices which do not denote the

466     Candee, Swan & Co. *v.* Deere & Co.     [Sept. T.,

Opinion of the Court.

goods or property, or particular place of business of a person, but only the nature, kind or quality of the article in which he deals, a different rule prevails, no property in such words, marks or devices, can be acquired. There is, obviously, no good reason why one person should have any better right to use them than another. They may be used by many different persons, at the same time, in their brands, marks or labels on their respective goods, with perfect truth and fairness. They signify nothing, when fairly interpreted, by which any dealer in a similar article could be defrauded.

The case of *The Amoskeag Manufac. Co.* v. *Spear, supra,* is said to be the leading American case on the question of trade marks, and in that it was held, that although, by the long continued use of certain words, letters, marks or symbols, which do not, of themselves, and were not designed to indicate the origin or ownership of the goods to which they are affixed, the goods so marked, and because so marked, have become known as those of the manufacturer who first used them, such fact can not alter the original meaning of the words or symbols, or the intent with which they were first used, as denoting the name of the thing, or its general or relative quality, or take from others the right to employ them in the same sense.

This portion of the claim set up by appellees must fall to the ground, as well as the claim based upon the use of the word "Moline," used to designate appellants' plows. It is very apparent, from the whole tenor of appellees' bill, their claim is founded on the fact, that their plows were sold by them as the "Moline plow," and not by the name of the manufacturer, and as that is only a generic term, it is seen, they can claim no exclusive right to the use of that name by which to designate their manufacture. *Thompson* v. *Winchester, supra,* and to which citation should be added *Singleton* v. *Bolton,* 3 Doug. 293; *Compton* v. *Jones,* 2 Vesey & Beames, 218, and *Perry* v. *Troffit* 6 Beavan, 66. These cases are all decided on the principle that the names used in the respective cases had become generic—merely descriptive of the kind or quality of

the articles to which they were respectively applied, without reference to any particular manufacturer.

Suppose the law required each person claiming a trade mark, to record the same, how would that of appellees appear on the record? If, by these letters and figures, or a combination of them, the law is settled, they are no basis for the claim; if the words "Moline Plows," the law is equally well settled, that no exclusive right can be had in them; if in the form presented by the counsel for appellees in their brief, "John Deere," inscribed on the segment of a circle, and the words "Moline, Ill." in a straight horizontal line underneath, it is not so claimed in the bill, and if. it was, there is no proof that such trade mark has been violated by appellants.

But it seems to us, it is not quite clear what appellees intend is, and shall be, their trade mark. It is not made out to our satisfaction, and we believe the rule to be, in such cases, the proof must be clear, leaving the question beyond a reasonable doubt.

It is not possible for us, even if it were necessary, as it is not, to review the many cases cited on the argument. There is not entire harmony in them, but one of the most important principles deducible from them is, that when a trade mark is violated, the essence of the wrong done consists in the sale of the goods of one manufacturer, as and for the goods of another, and, therefore, that such violation can only be predicated of a copy or imitation of a trade mark, or those portions of a trade mark which truly designate the origin or ownership of the goods; and another is, that a similarity between two trade marks used by different manufacturers for their goods, although of such a character as to induce a belief in the mind of the public that they belong to and designate the goods of the same manufacturer or trader, is not, of itself, sufficient ground for a prohibition of the use of such trade mark by him who did not first adopt it. That similarity, to entitle the originator to the protection of the law, must be such as to amount to a false representation, not alone that the two articles have the same origin,

but that the goods to which the simulated mark is attached are the manufacture of him who first appropriated the trade mark. *Amoskeag Manufac. Co.* v. *Spear, supra;* Upton on Trade Marks, 136.

Testing this case by these principles, it has no foundation. On the part of appellants, the essence of the wrong alleged to be done, is absent, and though a similarity may exist in the mark or brand of appellants, with that of appellees, if the words "John Deere," printed in capital letters on the segment of a circle, with the name "Moline, Ill." on a straight horizontal line, also in capital letters, be their trade mark, which is not so alleged in the bill, or proved, or found by the court, it is not such as to amount to a false representation, that the goods of appellants, bearing their brand, had the same origin, and were of the manufacture of appellees, if they did, in fact, first appropriate it as a trade mark.

On this point, there is no evidence whatever. There was no pretension by appellees, of a trade mark, until appellants commenced to manufacture, and that successfully, plows at Moline, and which they published far and wide as the "Moline Plow," and thus interfered with the monopoly appellees had created. For their audacity, in so interfering, the sternest decrees of the law are invoked, but, in this court, the invocation will be vain, on such facts as are presented by this record.

We forbear any discussion of the questions presented by the supplemental bill, deeming it unnecessary; satisfied, as we are, that appellees have no standing in a court of equity, and for the same reason decline the discussion of the question, how far claimants under Deere may be protected in any trade mark he may have had and used.

Entertaining the views herein expressed, the decree of the circuit court must be reversed, the injunction dissolved and the bill dismissed.

*Decree reversed.*