**WINTER GARDEN DISTRICT CHAMBER OF COMMERCE v. WINTER GARDEN FAIR et al. (No. 7873.).**

Court of Civil Appeals of Texas. San Antonio. Oct. 19, 1927.

Rehearing Denied Nov. 23, 1927.

1. **Appeal and error** ⚖️➔757(3)—**Statement of appellant's version of facts and argument supporting its position is not statement contemplated by briefing rules.**

Statement in brief, consisting of appellant's version of facts and argument in support of its position, is not such as is contemplated by rules for briefing.

2. **Trade-marks and trade-names and unfair competition** ⚖️➔9—**"Winter Garden" held geographical name, not subject to exclusive appropriation as trade-mark or trade-name.**

The name "Winter Garden," chosen to designate chamber of commerce for three counties and part of another, *held* a geographical name, which cannot be exclusively appropriated as a valid trade-mark or trade-name.

3. **Evidence** ⚖️➔6—**It is judicially known that winter gardens have long been successfully cultivated near San Antonio.**

It is judicially known that for many years winter gardens have been successfully cultivated in the vicinity of San Antonio.

4. **Trade-marks and trade-names and unfair competition** ⚖️➔3(4½)—**Chamber of commerce for three counties and part of another could not claim exclusive right to use name "Winter Garden" as against parties holding fair in another part of latter county.**

Chamber of commerce for three counties and part of another could not claim exclusive right to use name "Winter Garden," theretofore applied to remainder of latter county, in which fair so denominated was held annually by parties sought to be restrained from using such name; it being applicable to any country where vegetables can be grown in open to maturity in winter months.

5. **Evidence** ⚖️➔5(2)—**General objects of county fairs and fact that they are never opposed to counties' welfare are common knowledge.**

General objects of county fairs and fact that they are never in opposition to promoting welfare of their respective counties, but stand for material advancement of farms of community, are matters of common knowledge.

6. **Trade-marks and trade-names and unfair competition** ⚖️➔9—**Fair association held entitled to use name "Winter Garden," adopted by chamber of commerce to describe district, including part of county in which fair was held.**

Association, seeking merely to encourage agriculture and horticulture by maintaining public fairs in county within section known as "winter garden" country, without intending to deceive any one or interfere with organization of cotton exchanges, etc., by chamber of commerce claiming exclusive right to use quoted words to describe district including part of such county, had same right to use such name.

Appeal from District Court, Frio County; W. O. Murray, Jr., Judge.

Suit by the Winter Garden District Chamber of Commerce against the Winter Garden Fair and others. From an order dissolving a temporary restraining order, plaintiff appeals. Affirmed.

Templeton, Brooks, Napier & Brown, of San Antonio, for appellant.

J. D. Dodson, of San Antonio, and Walter Stout, of Pearsall, for appellees.

FLY, C. J. Appellant sought a temporary injunction to restrain appellee from the use of the words "Winter Garden" as a part of the name of the fair annually held in Pearsall, Frio county, claiming that it had, in 1924, appropriated the words "Winter Garden," descriptive of a district composed of the counties of Maverick, Zavalla, Dimmitt, and precinct No. 4 of Frio county, and afterwards, on March 19, 1927, had obtained a charter from the state of Texas of the Winter Garden district chamber of commerce. A temporary restraining order was granted and on a hearing of the facts that order was dissolved, and from that order of dissolution this appeal has been perfected.

[1] The statement made in the first part of the brief is not such a one as is contemplated by the rules as to briefing, but consists of appellant's version of the facts and of argument in support of its position. The facts show that appellant was a voluntary unincorporated association, composed of the chambers of commerce of the different towns in the district, which acted under this agreement until it was chartered in March, 1927. Its purposes, as stated in the charter, are:

"For the organization of cotton exchanges, chamber of commerce boards of trade, with power to provide and maintain uniformity in the commercial usages of cities and towns, to acquire, preserve and disseminate valuable business information, and to adopt rules, regulations and standards of classification, which shall govern all transactions with the cotton trade, and with other commodities where standards and classifications are required, and generally to promote the interest of trade and increase of facilities of commercial transactions."

The objects of the Winter Garden Fair are stated to be "the encouragement of agriculture and horticulture by the maintenance of public fairs and exhibitions of stock and farm produce." Appellant has no capital stock, owns no property, and has very limited resources, if they are to be judged by the amounts collected to conduct the affairs of the district. The evidence disclosed that a vast territory, west, south, and southeast of San Antonio was known as Winter Garden territory.

---

⚖️➔For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[2] Appellant is claiming the exclusive right to use the name "Winter Garden," and insists that, because in 1924 it chose the name to designate and identify it as a chamber of commerce in three entire counties, besides a portion of the county in which appellee holds its annual fair, it has exclusive right to the name. The name Winter Garden is one that would be denominated a geographical name, and under the authorities cannot be exclusively appropriated as a valid trade-mark or trade-name. Hesseltine's Law of Trade-Marks and Unfair Trade, p. 61 et seq. Numerous decisions are cited which support the text. Among the names held not trade-names are "York, Alabamatube, Old Country, Trenton, London Dock, Durham Tobacco, Brooklyn White Lead, Buffalo Pitts, Moline, Ill., Clinton, Pocahontas, Columbia, Manhattan, Lackawanna, Elgin, Amherst, Ozark, Worcestershire, Yale, Lexington, Red River Special," and many others.

In the case of Delaware & H. Canal Co. v. Clark, 13 Wall. (80 U. S.) 311, 20 L. Ed. 581, it was sought to restrain the use of the word "Lackawanna" as describing coal which was mined in the Lackawanna Valley, and the United States Supreme Court held:

"The word 'Lackawanna' * * * was not devised by the complainants. They found it a settled and known appellative of the district in which their coal deposits and those of others were situated. At the time they began to use it, it was a recognized description of a region, and of course of the earths and minerals in the region. * * * It must then be considered as sound doctrine that no one can apply the name of a district of country to a well known article of commerce, and obtain thereby such an exclusive right to the application as to prevent others inhabiting the district or dealing in similar articles coming from the district, from truthfully using the same designation."

In the case of Columbia Mill Co. v. Alcorn, 150 U. S. 460, 14 S. Ct. 151, 37 L. Ed. 1144, the Supreme Court cited and approved the case of Delaware & H. Canal Co. v. Clark, and held:

"The appellant was no more entitled to the exclusive use of the word 'Columbia' as a trademark than he would have been to the use of the word 'America,' or 'United States,' or 'Minnesota,' or 'Minneapolis.' These merely geographical names cannot be appropriated and made the subject of an exclusive property."

In the case of Candee v. Deere, 54 Ill. 439, 5 Am. Rep. 125, it was desired to enjoin the use of the word "Moline" as applied to plows, and the Supreme Court of Illinois said:

"Is it possible, can it be tolerated for a single moment, that a maker of ploughs at Moline shall not be permitted to sell his work as a Moline plough—to advertise them in every form as the Moline plough? Would it not be the truth, and shall a manufacturer be prevented from publishing to the world where his wares are made? * * * Any number of plough makers 299 S.W.—33

can go with impunity to Moline and establish there, plough factories, and brand on their ploughs their own name and the name of the town, and send them broadcast over the country, to the joy of our farmers, and to the common benefit of all."

See, also, Castner v. Coffman, 178 U. S. 168, 20 S. Ct. 842, 44 L. Ed. 1021. The authorities to the same effect are numerous. The decisions apply with equal force to tradenames as distinguished from trade-marks.

In all the cases coming under our consideration the plaintiffs sought protection for a name given to some product of the soil or some manufactured article, which they claimed to have made valuable by their efforts in properly obtaining or manufacturing the same.

[3, 4] Appellant had no product of natur, to which it had given name; it had no manufactured article that it was advertising and selling. On the other hand, it was claiming to own the name to a vast extent of country, without being able to show any proprietary interest in the same. It is claiming a name that can be, and has been, applied to any country where vegetables can be grown in the open to maturity in the winter months. The vegetables so grown, wherever it might be, would be winter garden vegetables. The evidence clearly indicates that the whole of Frio county, of which Pearsall is the county site, was in a region known as the winter garden district, a name applied to it before appellant ever dreamed of appropriating the same. It could with equal propriety appropriate the name of "Rio Grande Valley," which has become famous over the Union for its semitropical products. It is judicially known that for many years winter gardens have been successfully cultivated in the vicinity of San Antonio, and any person producing vegetables in those gardens could truthfully advertise them as being in the winter garden district. Appellant had no power or authority to segregate a portion of the winter garden district and claim the exclusive right to use the name "Winter Garden." It could with as much propriety appropriate the name "Lone Star State" or the "Alamo."

[5, 6] The evidence totally fails to show any intention or desire upon the part of appellee to deceive any one or to interfere in any manner with appellant's prerogatives in organizing cotton exchanges, chambers of commerce, boards of trade, or its maintenance of uniformity in commercial usages of cities and towns, or in the adoption of rules to govern transactions with cotton and other commodities or in rules as to classification of cotton or in its general efforts in the interest of trade and to increase facilities of commercial transactions. Appellee is seeking through its charter as a county fair no such imperial prerogatives as those enumerated, but seeks in a plain and unpretentious man-

ner, as provided by its charter, to encourage "agriculture and horticulture by the maintenance of public fairs and exhibitions of stock and farm produce." Every one knows the general objects of county fairs, and knows that they are never in opposition to promoting the welfare of their respective counties, but stand for the material advancement of the farms of the community. Appellee was shown to be in a section of the country known as the "Winter Garden" country, and had the same right to use that name that it had to use the words "Frio County." It was located in both, and had an equal right to either name, and the use of either could not deceive any one. Appellant recognized the fact that other adjacent territory was in the real winter garden district by providing for adding it, when desired, to the district claimed by it since 1924, for the first three years as an unincorporated body, and then for a few months under a charter. Use of the words "Winter Garden" as part of the name of the fair did not deceive any one, and did not have a tendency to deceive any one. No one was injured, and, if it was the desire of appellant to advance the welfare and progress of the territory over which it claimed jurisdiction, it should have welcomed the efforts of appellee, a portion of whose county was in the district claimed by appellant, although there was some uncertainty as to the territory included therein. At one time it seems that a large number of acres, and even a whole county, were included, but afterwards for some reason were cast without the garden. In its zeal to push the district as a place for the production of citrus fruit, appellant obtained and used a picture of a fine orange tree in the yard of Mrs. Tyner, in the town of Pearsall, and sent it out as an advertisement of the "winter garden district." Appellant in that act showed that it considered Pearsall in the winter garden district, or it was a deliberate attempt to deceive the public.

There is no equitable ground for relief by injunction, and the judgment of the trial court will be affirmed.