THE MONTGOMERY PALACE STOCK CAR COMPANY OF ILLINOIS

*v.*

THE STREET STABLE CAR LINE.

*Filed at Ottawa June 20, 1892.*

1. PATENTS — *contract to assign future patents.* On August 25, 1870, A, the owner of two letters patent for an improved stock car, assigned the same to B and C, as trustees, and on the same day, A and eighteen others entered into a written agreement for the formation of a corporation, and that the patents should be assigned to it, and which further provided that any inventions or improvements applicable to such cars, "heretofore or hereafter originated or developed by any member of" the company, it being patentable, should be patented in the name and for the benefit of such company: *Held,* that the inventions or improvements mentioned as thereafter originated or developed did not embrace a patent subsequently issued to A and D, or a joint invention of A and any other person, or to A and D as the assignees of some other person, nor an invention of A after the failure of the corporation to transact business, or after it had practically ceased to be a living corporation and had sold its corporate property.

2. SAME — *agreement to assign future patents — effect after abandonment of the enterprise.* In such case, the company for whose benefit the future patents were to be taken out, and contemplated by the parties to the agreement, was a living and a going company, and a member of the same, within its true intent and meaning, was a member who had a substantial and existing interest in it, and not a person who, upon the abandonment of the contemplated enterprise, virtually ceased to be a member of the company. After the abandonment of the enterprise no member of the company was bound by the undertaking to assign any invention he might make to the company, but he might take a patent therefor in his own name.

3. SAME — *contract for assignment — how construed.* An agreement of an inventor to assign to another, in gross, the results of his future labors and investigations, or the right to a patent for subsequent discoveries and inventions, or improvements thereon, will not be liberally construed against such inventor.

4. SAME — *assignment after expiration.* The assignment of letters patent for an invention after they have expired by their own limitation is a mere nullity, as the improvement therein mentioned, by such expiration, has become the property of the public, generally. And if the holder has already assigned the patent, and the assignment is duly

recorded, a second deed of assignment, even if made before the expiration thereof, will pass no title to the second assignee.

5. SAME—*enjoining their use*—*jurisdiction of the State court.* The holder of letters patent can not maintain a bill in equity in the State court to enjoin the use of the same by one who has never taken or held title thereto, in trust or other otherwise, for the reason that exclusive jurisdiction is vested in the Federal courts for the infringement of patents.

6. CONTRACT—*to form a corporation and assign future patents*—*consideration.* Where several persons form a corporation under a written agreement, which provides for the assignment by one of two patents held by him, to the company, and also that any future inventions or improvements originated or developed by any member of the company shall be taken in the name and for the benefit of the company, the stock issued to the party holding the two patents is not the consideration for his agreement in respect to further inventions, but the consideration, as to him, is two-fold, viz., the expectation of profits to be derived from the business of the company, and the hope of benefits that may result to him from the labor and study of his associates,—in other words, the benefit of their similar agreement on the subject.

7. SAME—*decreeing specific performance*—*consideration.* A court of equity will not decree specific performance of a contract unless it is founded on an actual and valuable consideration, and under some circumstances requires an adequate consideration; and there must be no change of circumstances affecting the character or justice of the contract.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. LORIN C. COLLINS, Judge, presiding.

Mr. ALFRED MOORE, and Mr. H. T. GILBERT, for the appellant:

The contract made by John W. Street and his associates on August 25, 1870, was good and sufficient, the promise, when made thereto, being a good consideration for the promise of each other member thereto. *Cooke* v. *Murphy*, 70 Ill. 96; *Crane* v. *Hutchinson*, 31 Bradw. 30; *Funk* v. *Hough*, 29 Ill. 145; *Gage* v. *Lewis*, 68 id. 604; *Gregory* v. *Scott*, 4 Scam. 392; *Tucker* v. *Woods*, 12 Johns. 190; *Aldridge* v. *Birney*, 7 T. B. Mon. 344; *Wadsworth* v. *Thompson*, 3 Gilm. 423.

The agreement to take out future inventions and things not *in esse,* in the name of the company then proposed to be formed, operated as an equitable assignment of such future inventions.   Bispham's Eq. (4th ed.) p. 214, secs. 164, 172, 368, 370; p. 434, sec. 384; p. 446; 1 Pomeroy's Eq. p. 403, secs. 369, 400, 373, 375, 377, 380; *Littlefield* v. *Perry,* 21 Wall. 221; *Aspinwall Manf. Co.* v. *Gill,* 32 Fed. Rep. 697; *Dubber Watch Co. case,* 38 id. 700; *Railroad Co.* v. *Trimble,* 10 Wall. 387; *Kennedy* v. *Hazelton,* 128 U. S. 667.

The deed of John W. Street, of 1870, to trustees, and the agreement of August 25, 1870, together constitute one agreement, so far as he is concerned.   *Littlefield* v. *Perry,* 21 Wall. 205; *Aspinwall Manf. Co.* v. *Gill,* 32 Fed. Rep. 697.

The assignment of "all property," etc., in general terms transferred all interests of the J. W. Street Palace Stock Car Company in the agreement of August 25, 1870.   Such a clause carries the contract of 1870 with it.   *Railroad Co.* v. *Trimble,* 10 Wall. 57; *Bruffet* v. *Railroad Co.* 25 Ill. 353; *Appleton* v. *Bacon,* 2 Black, 699.

Equity will enforce the specific agreement, whether written or oral, to assign a patent, or any interest therein, and can compel a divestiture of the interest of defendant.   1 Bispham's Eq. p. 216, secs. 165, 172, 384; *Littlefield* v. *Perry,* 21 Wall. 221; *Burr* v. *La Turgue,* 102 N. Y. 415; *Kennedy* v. *Hazelton,* 128 U. S. 667; *Aspinwall Manf. Co.* v. *Gill,* 32 Fed. Rep. 697; *Dueber Watch Co. case,* 38 id. 700; *Blackney* v. *Goode,* 30 Ohio St. 359; *Railroad Co.* v. *Trimble,* 10 Wall. 387; *Bogun* v. *Daughdille,* 51 Ala. 312; *Covell* v. *Cole,* 16 Mich. 223; *White* v. *Dobson,* 17 Gratt. 262; *Austin* v. *Ewell,* 25 Texas, 403.

Messrs. BOND & ADAMS, for the appellee:

The bill is insufficient, and does not state or show sufficient cause of action to entitle the appellant to the relief prayed for, or to any relief.

The entire title relied on comes through Steele & Pow, trustees, to the Street Palace Stock Car Company, and it in no way relates to or refers to the alleged agreement of August 25, 1870.    Street did not convey to Steele & Pow, or authorize them to convey future inventions to the company.

The allegations of the bill in respect to the alleged contract of August 25, 1870, are not sufficient as a foundation for the prayer of specific performance by transfer of the two recent patents.

The contract is too old and stale to be enforced in a court of equity.   Bispham's Eq. p. 432, sec. 376.

Patents are personal property, and the general rule is, that specific performance will not be decreed on contracts relating to personal property.    Bispham's Eq. sec. 368; *Paper Bag Co.* v. *Paper Bag Co.* 32 Fed. Rep. 783.

Specific performance can not be enforced as to gifts.    There is no agreement to even pay the costs of procuring the patents. Bispham's Eq. sec. 362.

There must be a valuable consideration.    It must be actual, and not constructive, to entitle a party to a specific performance.    Bispham's Eq. sec. 373.

A specific performance will not be decreed unless the contract is mutual, certain, and its enforcement practicable. Bispham's Eq. sec. 377.

Specific performance will not be decreed where the complainant does not come in with clean hands; where equities exist on the other side; where there has been negligence or *laches;* where the contract is hard and destitute of equity; where it is oppressive; where the condition of things has materially changed; where there is a substantial defect in complainant's title, or the title is doubtful.    These instances are taken from Bispham, section 376, page 432, where ample authorities are cited.

A specific performance will not be decreed where there is a want of mutuality in the contract.    10 Wall. 340.

A party seeking a specific performance must be a claimant for value, and must show that damages would not afford adequate compensation.    Bispham's Eq. sec. 375.

The appellant took nothing by its deed from the president and secretary of the old Montgomery Palace Stock Car Company of 1874, made in April, 1890, for the reason that the patents purported to be conveyed expired November 2, 1886, and that from and after that date were public property and could not be sold or assigned.

The appellant took nothing by the deed of June, 1890, for the reason that the public, and not the parties thereto subscribing, owned the said patents, and had owned them for four years.    The attempt to sell them at that date is not only a fraud on the appellees, but it is also a fraud upon the public.

The sale of a patent after it becomes public property is null and void, and does not convey anything,—not even the right to recover for past infringements in the assignee's own name. *Bell* v. *McCullough*, 1 Fish. 380; *Root* v. *Railroad Co.* 105 U. S. 189.

Messrs. McClellan & Cummins, also for the appellee:

The bill presents a case of infringement as to the inventions covered by the said patents of 1869, and, as we think, also of infringement of patents issued to Fischer and Street in 1886, of which this court has no jurisdiction, and according to the allegations of the bill the inventions of the said expired patents were applied to each and every one of the cars along with the other inventions of the later patents.    *Manufacturing Co.* v. *Reinoel*, 102 N. Y. 167; *Continental Store Service Co.* v. *Clark*, 100 id. 365; *Williams* v. *Star Sand Co.* 35 Fed. Rep. 366; *Manufacturing Co.* v. *Iron Works*, 20 N. W. 682; *Hovey* v. *Rubber Tip Pencil Co.* 3 Conn. 119.

The alleged agreement of August 25, 1870, between the promoters of the J. W. Street Palace Stock Car Company to be thereafter formed, to be carried out by and through that

company, relating to inventions and improvements, was a naked agreement,—a mere proposition for an agreement,—until the company was actually formed and the company accepted and adopted the agreement.   1 Morawetz on Corp. sec. 540; Taylor on Corp. secs. 76, 77, 87, 90; *Screw Co.* v. *Cousley,* 72 Ill. 531.

Equity will not enforce the specific performance of the contract unless it is unambiguous, founded on a valuable consideration, and fair and just in all its parts.   *Wollensak* v. *Briggs,* 119 Ill. 465; *Hamilton* v. *Harvey,* 121 id. 471.

If the contract be hard, oppressive, unjust, inequitable under the circumstances, and not what the parties contemplated, or if, on account of subsequent events and changing circumstances, render its enforcement inequitable, the court will not enforce it.   *Williams* v. *Williams,* 50 Wis. 311; *Taylor* v. *Merrill,* 55 Ill. 61; *Kimball* v. *Tooke,* 70 id. 553; *Leigh* v. *Crump,* 1 Ired. Eq. 299; *Cannady* v. *Shepard,* 2 Jones' Eq. 224; Pomeroy's Eq. sec. 178; *Willard* v. *Taloe,* 8 Wall. 557; *Stone* v. *Pratt,* 25 Ill. 25; *Brasher* v. *Gratz,* 6 Wheat. 539; *Railroad Co.* v. *Cromwell,* 91 U. S. 645; *Fish* v. *Leser,* 69 Ill. 394.

Mr. Justice Baker delivered the opinion of the Court:

This was a suit in equity, instituted in the Cook circuit court by the Montgomery Palace Stock Car Company, of Illinois, against the Street Stable Car Line and others.   A demurrer was sustained to the supplemental and amended bill of complaint, and said bill dismissed out of court for want of equity.   The Appellate Court for the First District affirmed the decree of dismissal.

The following facts appear, among others, from the averments of the bill:   On August 25, 1870, one John W. Street was the owner of letters patent No. 96,362 and of letters patent No. 96,500, both issued on November 2, 1869, and both being for new and useful improvements in stock cars, and

both of said letters patent expired by limitation on November 2, 1886. On August 8, 1885, said Street and others organized, under the laws of Illinois, "The Street Stable Car Line," defendant and appellee herein, as a corporation, for the purpose of manufacturing, leasing and selling stable cars. In the year 1886 said Street pretended to sell, assign and convey to one Siegfried M. Fischer all his interest in said patents No. 96,362 and No. 96,500, and on February 23, 1886, said Street caused to be issued to himself and to said Fischer letters patent No. 336,872 and No. 336,873, for improvements in stock cars. The averments of the bill in that behalf are:

"Soon after the issuing of the said letters patent the defendant company procured the same to be conveyed to it, under which patents defendant company has ever since been constructing, operating and leasing its cars, as within this bill already set out, and ever since then defendant company has promoted its business and conducted same under the protection of all and singular the foregoing letters patent which it pretended to have obtained, and the cars which have been constructed and operated by it, since its organization unto the present time, have been made after the pattern, form and claim of all and singular the foregoing inventions specified in the said letters patent, including those which have expired, as well as those which remain in full force and effect."

It further appears from the bill, that the defendant company, by using said letters patent and assuming to exercise the rights conferred thereby, has constructed three thousand cars, known as "Street Stable Car Line Cars," and has operated for several years last past with a capital stock of $5,000,-000, and has realized and paid dividends thereon for three years last past, at the rate of more than six per cent per annum upon the nominal value thereof; that three years ago it received $450,000 as the rental of cars leased by it to divers corporations and common carriers, two years ago received

$900,000 as such rental, and last year received $1,350,000 as such rental, and that its business of building and leasing stock cars is constantly increasing.

The principal objects of the bill are, to obtain a decree that the appellee company held and holds letters patent No. 96,-362, No. 96,500, No. 336,872 and No. 336,873 in trust for the appellant company, to compel an assignment to the latter company of the two patents issued on February 23, 1886, by the United States to John W. Street and Siegfried M. Fischer, and for an accounting in respect to rents, issues and profits.

The inception of the alleged title of appellant is, briefly, this: On August 25, 1870, John W. Street was, as has heretofore been stated, the owner of letters patent 96,362 and 96,500, and on that day assigned said letters patent to Nelson Steele and R. Pow, as trustees. On the same day said Street and eighteen other persons entered into a written agreement, the substance of which (with the exception of two provisions hereinafter quoted at length) was, that they would organize an incorporated company under the laws of the State of Illinois, under the name of "J. W. Street's Palace Stock Car Company of Chicago, Illinois," with a capital stock of $6,000,000; that letters patent 96,362 and 96,500 should be assigned to the company; that eight designated parties to the contract should furnish for the company the improved cattle car then lately constructed at Cleveland, Ohio, and pay all expenses theretofore incurred in experimenting with the same, and also an additional amount necessary to make an experimental trip with said car from Chicago to New York and return, and that the remaining ten parties to the contract should pay into the treasury of the company, together, $15,000 for the further promotion of the business of the company. Of the stock of the company, $900,000 was to be preferred and guaranteed stock, and the residue common stock, and of the latter, $100,000 was to be disposed of at the option of the board of directors, $1,210,500 issued to Street in consideration of the assign-

ment of letters patent 96,362 and 96,500, and the remaining $3,789,500 divided equally among the other parties to the contract. The J. W. Street's Palace Stock Car Company was organized on September 20, 1870, and thereafter Steele and Pow, trustees, assigned to it patents 96,362 and 96,500.

It further appears from the allegations of the bill of complaint, that in the month of October, 1872, and for a long time prior thereto, the "J. W. Street's Palace Stock Car Company" was indebted to divers persons and corporations, and that there was much confusion in its business affairs, and that its stockholders were desirous of winding up the business and terminating their relations with the company, and selling out all and singular its rights and properties, and providing for a final adjustment of all and singular its debts.

It is also claimed, that by virtue of various resolutions of the J. W. Street's Palace Stock Car Company, and of numerous deeds of assignment, bills of sale and other instruments in writing, all of which are set out in detail in the bill, said patents 96,362 and 96,500, and all the property, rights, titles, interests, claims or demands, of whatsoever character, that had belonged to the last mentioned corporation, became vested in one Edwin O. Fowler. As broad as or broader than any other of these various muniments of title, was a bill of sale executed by said company on December 6, 1872, to said Fowler. By the terms of said instrument the company, in consideration of $20,000, sold and conveyed to said Fowler, "his heirs, executors, administrators and assigns, all right, title, interest, claim and demand, of every name and nature, in and to the cars, rolling stock, and all property of every name and nature owned by it, the said company, including all patents owned by it or in which it had any interest, and all right to any re-issue or extension of any such patents, and also for all claim for patents in which it had any interest, therein and thereby giving to the said Edwin O. Fowler full right to commence and prosecute, in the name of said company, any suit

in relation to such property as may become necessary, or to defend any suits against said company, and also to perfect any claim for patents, or to obtain patents on any claim pending in the hands of A. M. Smith, patent attorney at Washington, D. C.

It also appears from the bill, that on September 18, 1874, James Montgomery and certain associates obtained from the Secretary of State of Illinois a charter for "The Montgomery Palace Car Company of Chicago, Illinois," and assumed to organize such corporation and elect its officers, but failed to perfect such organization by filing and recording said charter in the office of the recorder of Cook county, Illinois, as required by law; that on November 18, 1874, the aforesaid Edwin O. Fowler, by his attorney in fact, assigned to said company letters patent 96,362 and 96,500, "together with all rights, claims and demands in and to the remaining assets of the said J. W. Street's Palace Car Company;" that said defective corporation assumed to preserve its organization by holding annual elections, but never did any actual business, and that in the spring of 1890 the Secretary of State, acting upon the advice of the Attorney General, refused to issue a certified copy of its charter, in order that it might be recorded in the recorder's office in lieu of the original charter, which had been destroyed, on the ground that the organization of the corporation could not be perfected after the lapse of two years from the date when the charter was issued.

It also appears, that on May 2, 1890, the "Montgomery Palace Stock Car Company of Illinois," complainant and appellant herein, was organized under the laws of this State; that on the first day of April preceding such organization, the defective Montgomery Company executed to said complainant company a deed of assignment of all its properties and assets; that on the day the appellant company was organized, the same persons who had executed conveyances to the defective company executed to it conveyances of the same tenor

and effect, and that on June 2, following, stockholders of the defective company representing a nine thousand and ninety-seven ten-thousandths interest in and to the properties and assets of the defective corporation, conveyed to the complainant company all their right, title and interest in and to said properties and assets.

In the view we take of the case it is not essential to consider the objections that appellee urges to the several claims of title exhibited by appellant.

In respect to patents 96,362 and 96,500 the case is of easy solution. The averments are, that "on or about the year 1886" Street made a deed of assignment of said patents to Fischer; that "on February 23, 1886," letters patent No. 336,872 and 336,873 issued to Street and Fischer, "and that soon after the issuing of said letters patent the defendant company procured the same to be conveyed to it, under which patents defendant company has ever since been constructing, operating and leasing its cars, as within this bill already set out, and ever since then defendant company has promoted its business and conducted same under the protection of all and singular the foregoing letters patent which it pretended to have obtained, and the cars which have been constructed and operated by it, since its organization to the present time, have been after the pattern, form and claims of all and singular the foregoing inventions specified in said letters patent, including those which have expired as well as those which remain in full force and effect."

It thus appears that the cars which appellee has constructed and operated since its organization have been based upon the inventions specified in all four of the letters patent, — i. e., 96,362, 96,500, 336,872 and 336,873, — and that such construction and operation began after the conveyance to it of the two patents of February 23, 1886. How long it was after the issuing of said last mentioned patents before appellee began using the inventions specified in 96,362 and 96,500

does not appear, otherwise than by the statement that it was "soon after," and soon after may well have been after patents 96,362 and 96,500 expired by their own limitations, on the 2d day of November, 1886, and became public property. It can not be presumed in favor of the pleader that appellee violated the law of the land by infringing upon said patents. Besides this, the statement is that the assignment to Fischer of said patents was "about the year 1886." If such assignment was after November 2, 1886, then the improvements which were the subjects of the assignment had already become the property of the public at large, and such assignment was a mere nullity; and if the assignment was prior to that date it did not convey title or anything else to Fischer, or to appellee through him, and for the reason that the assignor, Street, had many years prior thereto conveyed said patents to others by assignments duly recorded. And so, even if it clearly appeared that said patents 96,362 and 96,500 were the property of appellant, and that appellee, prior to November 2, 1886, made use in its business of the inventions conveyed by them, yet appellee never took or held title to these patents, in trust or otherwise, and there is no ground upon which to base a claim of equitable jurisdiction in the State court in respect to such use, but in regard thereto the exclusive jurisdiction would be in the Federal courts, for infringements of patents.

The more important question in the case, however, has reference to patents No. 336,872 and No. 336,873, issued on February 23, 1886. The claim is, that the appellant corporation is the equitable assignee of said patents, and that the appellee corporation holds the title to said patents as trustee for appellant. This claim is based upon a provision contained in the written agreement of August 25, 1870, entered into by John W. Street and his eighteen associates, who were then engaged in making arrangements for the organization of the J. W. Street's Palace Stock Car Company of Chicago, Illinois, and to which agreement we have above herein made reference. That pro-

vision was as follows: "It is further understood and agreed upon, that any inventions or improvements to be applied as an improvement to the above named cattle car, heretofore or hereafter originated or developed by any member of this company, the same being patentable, shall be patented in the name and for the benefit of aforesaid company." Upon this branch of the case the bill of complaint of appellant is, in substance, a bill for the specific performance of this provision of said agreement, for its benefit, as assignee of all the property of the J. W. Street's Palace Stock Car Company, and equitable assignee of the two patents of 1886.

We but hold with other courts when we say that an agreement to assign, in gross, the results of an inventor's future labors and investigations should not be liberally construed as against such inventor. In *Aspinwall Manf. Co.* v. *Gill et al.* 32 Fed. Rep. 697, it is said: "A mortgage on a man's brain, to bind all its future products, does not address itself favorably to our consideration."

By the terms of the agreement it was only "inventions or improvements originated or developed by any member" of the J. W. Street's Palace Stock Car Company that should "be patented in the name and for the benefit of aforesaid company." The case made by the bill is, that "John W. Street caused to be issued to himself and to one Siegfried M. Fischer" said letters patent 336,872 and 336,873, for improvements in cattle cars. No claim is made that Fischer is or ever was a a member of the company. All that is stated in the bill may be true, and it yet be the fact that the improvements specified in said respective patents were not inventions or improvements originated or developed by any member of the company. It is consistent with the averments of the bill, that Fischer was the inventor, or that Fischer and Street were the joint inventors, or that one was assignee of some third person who was joint inventor, or that both were assignees of some third person who

was sole inventor.   It would seem that this point, of itself, is decisive of the case, as against appellant.

Again, while it does not appear that the J. W. Street's Palace Stock Car Company was ever formally dissolved, yet it does appear that said corporation, after a precarious and unsuccessful existence of about two years, ceased to do business or act as a corporation from and after the year 1872; that at that time it sold all and singular its rights and properties, and made provision for a final adjustment of its debts, and that all this was done for the express purpose of winding up the business of the corporation, and with the intent, on the part of the stockholders, to thereby terminate their relations with the company.   Since 1872 the corporation has not been a going company, and the nineteen persons who signed the agreement of August 25, 1870, and its other stockholders, if any, have not been members of the company having a living and substantial interest in the welfare and success of the company.   The agreement did not provide that any inventions or improvements originated or developed by John W. Street should be patented in the name or for the benefit of the company, but, simply, that any inventions or improvements originated or developed by any member of the company should be patented in the name and for the benefit of "aforesaid company."   The "aforesaid company," within the contemplation of the agreement, was a living and going company,—not the mere corpse of a company; and a member of the company, within its true intent and meaning, was a member who had a substantial and existing interest in it, and not a person who, upon the abandonment of the contemplated enterprise, virtually ceased to be a member of the company.   It is unreasonable to suppose that it was the intention of the nineteen persons who signed the agreement, to mortgage their brains for all future time to a corpse.   It is doing no violence to either the language or the spirit of the agreement to hold, that when all the stockholders and members of the company

abandoned it and terminated all their actual relations to it, and the corporation ceased to exist as a living and going company, then John W. Street ceased to be a member of the company, within the purview of the provision of the contract under consideration. Force is added to this view of the matter by the fact that the same agreement contains this further provision: "In case of failure of this enterprise for the purpose intended, the car now built and transferred to this company shall become the property of the eight persons who paid for its erection." This affords positive proof that it was within the contemplation of the persons signing the agreement, at the very time of such signing, that the enterprise undertaken might prove a failure and be abandoned.

A court of equity will not decree the specific performance of a contract, unless such contract is founded on an actual and valuable consideration, and under some circumstances even requires an adequate consideration, and there must be no change of circumstances affecting the character or justice of the contract. Story's Eq. Jur. secs. 776, 787; Bispham's Eq. secs. 372, 373, 374, 376; *Hamilton* v. *Harvey*, 121 Ill. 469; *Kimball* v. *Tooke*, 70 id. 553; *Taylor* v. *Merrill*, 55 id. 61; *Stone* v. *Pratt*, 25 id. 25; *Fish* v. *Leser*, 69 id. 394; *Lear* v. *Chouteau*, 23 id. 39; 3 Pomeroy's Eq. Jur. sec. 1405.

The shares of capital stock in the J. W. Street's Palace Stock Car Company, that were issued to John W. Street, were not understood or intended as a consideration for the provision in regard to future inventions or improvements, nor does it appear that said shares were ever of any pecuniary value. It is expressly stated in the agreement of August 25, 1870, that said stock was to be issued to and be the property of said Street, in consideration of the assignment to the company of letters patent 96,362 and 96,500. As we have already seen, the agreement that inventions should be patented in the name and for the benefit of the company was not a personal agreement of Street, but was an agreement applicable alike

to all inventions or improvements originated or developed by any member of the company. The real consideration which induced Street to join in the agreement to transfer future inventions to the company was two-fold,—the expectation of profits to be derived by him as a stockholder from the business to be transacted by the corporation, and the hope of benefits that might result to him from the labor and study of his eighteen associates, who signed the same agreement, that inventions or improvements originated or developed by any member of the company should be patented for the benefit of the company. The venture undertaken was a failure, and the company, in 1872, ceased to do business, and has done no business since, and the eighteen associates of Street, with the intention of "terminating their relations with the company," abandoned it, and ceased thereafter to either labor or study for its benefit, and have allowed it to sleep the deep sleep of death for more than twenty years; and so, in respect to the joint agreement to patent, for the benefit of the company, future inventions and improvements in cattle cars, there has been, at least so far as said Street is concerned, a total failure of consideration. It would therefore be eminently inequitable and unjust to decree the specific performance of the agreement of August 25, 1870, that is asked for in this case.

The scheme for transporting live stock in stable cars that was based upon the two patents of 1869 was a failure. The parties to whom said patents were transferred made no attempt even to carry into practical effect the inventions specified in said patents. They contented themselves with organizing, in 1874, a paper corporation, and did not even go to the trouble and expense of perfecting and validating that corporation by filing and recording their articles of incorporation in the office of the recorder, but allowed the corporation to lapse. Letters patent 336,872 and 336,873, for improvements in stock cars, were issued in 1886, by the United States, to John W. Street and Siegfried M. Fischer, and they conveyed the same to

appellee, and appellee availing itself of the inventions covered by these letters patent, and also of the inventions specified in the two patents of 1869, which became public property in 1886, worked out a practicable solution of the problem of transporting cattle in stable cars, and built up a large, prosperous, remunerative and growing business. The promoters of the lapsed Montgomery Palace Stock Car Company of 1874 awoke, in 1890, from their sleep of years, it then being some three or four years after the patents of 1869, Nos. 96,362 and 96,500, had expired by limitation, and organized the appellant company, and the title which is here exhibited was conveyed to appellant, and it prosecuted this bill for the purpose of depriving appellee of the patents which were issued in 1886 and assigned to it, of destroying the extensive business which it has established, and of taking from it the rents, issues and profits which it has thus far realized from that business. In our opinion there is no equity in its supplemental and amended bill of complaint, and there was no error in sustaining a demurrer to it or in dismissing it.

The judgment of the appellate court is affirmed.

*Judgment affirmed.*