HERCULES SANCHE

*v.*

MYRTLE G. MAHLER *et al.*

*Opinion filed December 20, 1905—Rehearing denied Feb. 13, 1906.*

1. APPEALS AND ERRORS—*when judgment of Appellate Court is final in part only.* A judgment of the Appellate Court sustaining the judgment below in granting a perpetual injunction but remanding the cause on the accounting branch of the case, with directions to permit an amendment of the pleadings, is final as to the injunction but not final as to the accounting.

2. SAME—*party cannot predicate right to writ of error on part of judgment in his favor.* If the judgment of the Appellate Court is severable, being final in part and in part not final, the party favored by the final part of the judgment, and of which he does not complain, cannot predicate his right to a writ of error thereon in order to have reviewed alleged errors in that part of the judgment not final. (*Blackaby* v. *Blackaby,* 189 Ill. 342, distinguished.)

WRIT OF ERROR to the Branch Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. R. S. TUTHILL, Judge, presiding.

The Appellate Court, in disposing of this case, made the following statement of facts, which we think fairly presents the issues as disclosed by the record, and therefore adopt the same as our statement of the case:

"Defendant in error filed his bill of complaint averring, in substance, that he had at great expense devised a certain clinical instrument which he called 'Oxydonor,' claimed to be useful in the treatment of disease, for which he had a large sale; that on or about March 15, 1895, he entered into a certain contract with one LaMotte Potter, and in pursuance thereof furnished Potter with money and instruments in value amounting to more than $3000, together with advertising matter and lists of names; that Potter, instead of opening an office for sale of complainant's instruments, as the contract provided, organized a corporation through which he proceeded to manufacture and sell a rival and imitation instrument, similar in appearance to the Oxydonor, to which he gave the name of 'Oxygenor,' holding it out as an improvement on the original instrument; that Mahler, one of the defendants, combined with Potter, and they devised another instrument called 'Perfected Oxygenor King,' a very close imitation of the Oxydonor, and which they made and sold with the money provided by complainant and on the reputation of complainant's instruments; that Potter subsequently sold out to Mahler and his associates and has since disappeared; that a co-partnership called the Oxygenor Company was formed, of which Mahler and other defendants are members, and that the members of such co-partnership are seeking to divert the complainant's trade to their own profit, holding out the Oxygenor as being the latest im-

provement on the Oxydonor or an equal thereto, claiming that Potter, as an employee of complainant, became possessed of the complainant's secret formulæ. The bill alleges that Mahler has admitted he acquired Potter's rights under the contract with the appellee, and avers that the defendants, composing the Oxygenor Company, took Potter's interest charged with full knowledge of the trust raised by said contract. Complainant prays that the contract of March 15, 1895, be construed as creating a trust against Potter and his assignees, for an order requiring them to turn over to the complainant their business, books and accounts, for the appointment of a receiver and for an injunction.

"Defendants, except Potter, answered, denying the execution of the contract by Potter and denying that he ever opened an office in Chicago to carry out the terms of such alleged contract. They assert that Potter, knowing the Oxydonor to be inert, inoperative and a fraud on the public, devised a different instrument, which he called the 'Oxygenor,' and which he publicly made and sold in Chicago from 1895 to 1898 without any attempt by the complainant to claim or assert any adverse right; that in January, 1898, the other defendants formed a co-partnership and bought out Potter in good faith and for value, without notice of any alleged trust between Potter and complainant, and that Potter thereafter ceased to have any interest in defendant's business. They deny they ever stated that their instruments were those of complainant or that they acquired from Potter complainant's secret formulæ; deny all fraud, all unfair competition, that they have acted contrary to any trust imposed on Potter by his contract with complainant, and aver that complainant has no right to make and sell the Oxydonor, because that right has been vested by him in a corporation, and that the letters patent of said Oxydonor have been held void in a suit relating thereto by a Circuit Court of the United States.

"The master to whom the cause was referred to report on the law and the facts, reported that the contract between

complainant and Potter was valid; that afterward the acts
of the parties thereto amounted to a complete abandonment
of it, but not to a technical rescission; that complainant had
furnished Potter with money and property of the value of
more than $3000, and that Potter failed to comply with the
contract. · The master concludes that a fiduciary relation be-
tween complainant and Potter is established; that Potter,
as soon as he got his equipment from complainant, violated
his contract with the latter and betrayed complainant's con-
fidence; that he manufactured and sold an imitation of com-
plainant's goods calculated to deceive the public, using the
complainant's trade-marks and testimonials; that Potter
received all the contract called for, was the first to violate
it and cannot rescind without refunding. The master con-
cludes that Potter, in using means furnished by complainant
for his own private benefit and violating the terms of the
contract, violated the trust thereby created, and that subse-
quently defendants had full knowledge of the fiduciary rela-
tion between complainant and Potter and took all Potter's
rights in the contract charged with the trust therein raised;
that the equities are with complainant and the prayer of the
bill should be granted.

"A decree was entered declaring plaintiffs in error trus-
tees for complainant, liable to account to him as such, and
restraining them from manufacturing, selling, advertising
or dealing in the Oxygenor, Improved Oxygenor and Per-
fected Oxygenor King, or other clinical instruments resem-
bling those devised by complainant. The master is directed
to take and state an account and to ascertain and report de-
fendants' profits and the damages sustained by the complain-
ant through the defendants' unlawful acts. Subsequently,
upon the defendants giving bond in the sum of $3000, the
injunction and other proceedings were stayed."

From the decree entered in the circuit court of Cook
county plaintiff in error sued out a writ of error in the Ap-
pellate Court, and upon a hearing in that court judgment

was entered reversing the decree and remanding the cause with directions, and this writ of error is sued out to review the judgment of the Appellate Court.

EDWARD J. HILL, for plaintiff in error.

F. M. BURWASH, for defendants in error.

Mr. JUSTICE RICKS delivered the opinion of the court:

Defendants in error have raised the question of jurisdiction of this court to consider the cause upon its merits, for the reason that the judgment of the Appellate Court is not a final judgment.

The decree of the trial court consisted of two parts, namely, awarding a perpetual injunction and providing for an accounting. The Appellate Court sustained the injunction, but held the accounting in abeyance until, on further investigation, it should be made to appear that in commencing this suit plaintiff in error has not been guilty of *laches,* and reversing the decree and remanding the cause with directions.

That part of the judgment of the Appellate Court in reference to the remanding order is as follows: "Therefore it is considered by the court that for that error, and others in the record and proceedings aforesaid, the decree of the circuit court of Cook county in this behalf rendered be reversed, annulled, set aside and wholly for nothing esteemed, and that this cause be remanded to the circuit court of Cook county, with directions to that court to allow complainant to amend his bill, and for further proceedings not inconsistent with the views expressed in the opinion of this court this day filed herein." The judgment, as will be seen, is to proceed in accordance with the opinion of the Appellate Court. In the opinion of the Appellate Court it was said that in so far as the decree awarding a perpetual injunction is concerned it is sustained, and so far as that part of the judgment of the

Appellate Court is concerned it cannot be reviewed upon this writ of error for the reason that it is in favor of the plaintiff in error. The only part reviewable in this court would be that part of the judgment reversing and remanding which provides for an amendment and accounting; and so far as this part of the judgment is concerned it cannot be held to be a final judgment, from which a writ of error could be sued out or appeal prosecuted.

The rule in reference to prosecuting appeals and writs of error from judgments of the Appellate Court is properly stated in *Hagemann* v. *Hagemann,* 188 Ill. 363, wherein it is said: "The judgments of the Appellate Court from which appeals may be taken to this court are of three classes: First, judgments affirming the judgments, orders or decrees of the inferior court; second, judgments entering final judgments in the Appellate Court; and third, judgments reversing the judgments, orders or decrees of the inferior court and remanding the cause with such directions to the inferior court as that no further proceedings can be had or taken in the trial court except to carry into effect the mandate of the Appellate Court."

The plaintiff in error relies upon the case of *Blackaby* v. *Blackaby,* 189 Ill. 342, (first reported in 185 Ill. 94,) to sustain his position as to the right of writ of error. This case is not similar to that case. There, the appellant, John Blackaby, was in possession of certain lands, and the appellees claimed to be tenants in common with him and brought their suit for partition and accounting. A decree was entered finding that the parties were tenants in common and that the appellees were entitled to partition. The chancellor, without referring the cause, erroneously disposed of the question of accounting between the parties. John Blackaby prosecuted an appeal from that decree to this court, and we reversed the decree of the lower court and remanded the cause "with directions to proceed in accordance with the views expressed in the opinion filed in this cause," which is almost identical

with the language of the remanding order in the case at bar. In the *Blackaby case* we pointed out in our opinion and expressed the view that the evidence was sufficient to warrant the decree for partition, but that the court, in passing upon the question of accounting without a reference to the master to state the account, committed error, and for that reason remanded the cause to the circuit court. (*Blackaby* v. *Blackaby*, 185 Ill. 94.) After the cause was remanded to the circuit court John Blackaby insisted upon offering evidence going to the question of partition and ownership of the land, and insisted that the cause was open for all purposes. His contention was denied by the chancellor, and on appeal to this court we held that the decree was final as to the question of partition, and that the only open question was the one relating to the accounting. It will be noticed that in that case that part of the decree that was made final on the first hearing by this court was against John Blackaby, who both times brought the record to this court. In the case at bar, however, as we have already said, so much of the decree as was made final by the mandate and opinion of the Appellate Court was in favor of the plaintiff in error, and he could not and does not complain of that here upon this writ. The question of the injunction and of the accounting are severable, and we can see no reason for holding that plaintiff in error can predicate his writ of error on a final judgment of which he does not complain, and ask to have alleged errors as to that part of the judgment that is not final reviewed by us.

We are clear that the judgment of the Appellate Court, in so far as it relates to the question of accounting, is not a final judgment, and that a writ of error does not lie in this court. The writ of error will accordingly be dismissed.

*Writ dismissed.*