MYRTLE G. MAHLER *et al.*

*v.*

HERCULES SANCHE.

*Opinion filed October 23, 1906.*

1. TRUSTS—*when a contract does not create a trust relation.* A contract whereby one party agrees to loan money to another and furnish him goods at a discount, to enable the latter to establish an office for the sale of such goods, the latter agreeing to devote his entire time to the business, make monthly settlements and re-pay the amount advanced, with interest, within one year, does not create a trust relation.

2. INJUNCTION—*when bill to enjoin manufacture of article will not lie.* A bill to enjoin the defendant from manufacturing and selling an article alleged to imitate one made by the complainant, for which the defendant was formerly agent, will not lie where it does not appear that the article was patented, or that the defendant, while in complainant's employ, obtained knowledge of secrets enabling him to manufacture such article, or that the latter resembles the one made by the complainant except in name.

WRIT OF ERROR to the Branch Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. R. S. TUTHILL, Judge, presiding.

F. M. BURWASH, for plaintiffs in error.

EDWARD J. HILL, for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

This case was before us at the December term, 1905, on writ of error prosecuted by the defendant in error in this case, to which reference is made for a statement of facts. (*Sanche* v. *Mahler,* 219 Ill. 349.) As was said in that case: "The decree of the trial court consisted of two parts, namely, awarding a perpetual injunction and providing for an accounting. The Appellate Court sustained the injunction, but held the accounting in abeyance until, on further investigation, it should be made to appear that in commencing this suit plaintiff in error has not been guilty of *laches,* and reversing the decree and remanding the cause with directions." We there held that, inasmuch as the part of the decree which was final and was affirmed by the Appellate Court was in favor of plaintiff in error, (defendant in error here,) he was not entitled to have the judgment of the Appellate Court reviewed. Plaintiffs in error, who were defendants in the trial court, now bring the case here on writ of error to the Appellate Court.

It is very apparent that the bill in this case is predicated upon the contract between defendant in error and Potter, of March 15, 1895, and the supposed trust relations between the parties, arising from their relations to each other under and by virtue of said contract. We do not construe said contract to have made Potter defendant in error's trustee. Said contract gave Potter permission to establish an office in Chicago for the purpose of selling in the State of Illinois, except in nine counties, the productions and inventions of defendant in error for the curing of disease. Potter agreed to devote his time to the business until otherwise agreed between the parties. Defendant in error agreed to furnish Potter goods at a discount of sixty per cent from the retail price list, Potter to make settlement every thirty days. Defendant in error also agreed to advance Potter sufficient funds to furnish and equip the Chicago office in accordance with a schedule accompanying the contract, and allow Potter

to draw on him for $35 per week for four weeks. The contract further provided that the amount advanced under its terms should be re-paid by Potter within one year, with interest at six per cent per annum. The contract was signed for defendant in error by his wife, whose authority to do so is not disputed. The sum of $425 appears to have been loaned Potter under the terms of the contract and goods to the amount of $168 were shipped to him by defendant in error. April 3, 1895, Potter wrote defendant in error that he had drawn on him for $70, in accordance with the terms of their agreement. The letter stated, "the above amount is for one week's drawing, $35, and $35 is for desk." April 5 an employee of defendant in error wrote Potter defendant in error was away from home and the letter would be referred to him when he returned. April 23 Potter wrote defendant in error that he had sold out the oxydonors on hand and requested one dozen instruments to be shipped by first express. In this letter he stated that on account of defendant in error being absent and of no money being sent him as agreed in the contract, he had used the proceeds of sales for advertising, etc. The receipt of this letter was acknowledged April 25 by a clerk of defendant in error, who wrote that in defendant in error's absence goods could only be sent C. O. D. This letter contained a statement of the account for goods previously shipped to Potter and requested a remittance. May 4 Potter wrote defendant in error that owing to his failure to comply with the written contract of March 15 he would hold him responsible for damages. The subsequent correspondence is not necessary to be quoted, as no further business appears to have been transacted between the parties. Defendant in error does not pretend that he complied with the terms of the written agreement on his part or offer any excuse for failing to do so. On May 8 his wife wrote Potter she and her husband had just returned from an absence since the March preceding and expressed her surprise at his letter of May 4. She stated that defendant in error

claimed she had no right to make the contract and that he would not perform its terms any further, and requested Potter to return the contract to her. Thereafter Potter was engaged until some time in 1898 in the manufacture and sale of the instrument called "Oxygenor," which the bill alleges is a close imitation of "Oxydonor."

The Appellate Court held that the contract did not make Potter trustee for defendant in error, "except in a general sense." We do not see how it made him a trustee in any sense. It is stated in the brief and argument of counsel for defendant in error that "the bill in this case was fashioned, the decree was formed and the entire litigation therein has been conducted upon the principles enunciated" in *Davis* v. *Hamlin*, 108 Ill. 39. We do not regard that case as conclusive of the question here involved, for in that case Davis was the trusted employee of Hamlin, while here no such relation existed between the parties. Defendant in error was simply loaning Potter money and selling him goods on time to enable him to go into business for himself. Defendant in error retained no interest in or lien upon the property furnished Potter. If Potter failed to re-pay the money borrowed or to settle for the goods purchased the law afforded a complete and adequate remedy, and in this we are in accord with the Appellate Court, for in the opinion of that court it is said: "If he [Potter] is to be regarded as such trustee in any sense, it must be upon grounds independent of the contract."

The Appellate Court held that plaintiffs in error were trustees for the defendant in error and liable to account to him, not by virtue of the contract between him and Potter, "but upon other grounds stated in the bill." These "other grounds stated in the bill," as appears from the opinion of that court, are allegations that Potter and plaintiffs in error used the means furnished by defendant in error to manufacture and sell an imitation of oxydonor, representing it to be the latest and best production of defendant in error, thereby

seeking to supplant his instrument and trade. We find no satisfactory evidence to support these allegations. Whether oxydonor was protected by patents at the time the agreement was made between Potter and defendant in error is somewhat difficult to determine from the testimony. It appears from the evidence of defendant in error that he at one time manufactured an instrument called "Electropoise," and that it, or certain parts of it, were the subject of letters patent. When asked if any of his patents applied to oxydonor he said they did not, and afterwards said, "The thing that I call oxydonor is one of the subjects of my patents." The bill does not ask for an injunction to prevent the infringement of a patent. If it did it could not be maintained, for jurisdiction in such cases is vested exclusively in the Federal courts. (*Montgomery Palace Stock Car Co.* v. *Street Stable Car Line,* 142 Ill. 315.) If it be assumed that the instrument was not protected by a patent, any one had a right to imitate it. On this subject the court said in *Candee, Swan & Co.* v. *Deere & Co.* 54 Ill. 439: "Appellees have no patent upon any portion of their plows. Any one, therefore, has a perfect right to make plows in their exact similitude, even to 'the curve of the mould-board' and 'the tip of the handles,'—in the minutest as well as in the most important points." There is no allegation in the bill that Potter, while in the employ of defendant in error, obtained knowledge of any secret in connection with the making or manufacture of the oxydonor, and if there was, the evidence was insufficient to sustain it. The allegation in the bill is, that Potter and Mahler sometimes held out to customers that the oxygenor instrument was the genuine, latest and best device of defendant in error, and at other times that Potter, by his former relations with defendant in error, obtained his secret formulæ, and at other times that Mahler alone knew the secret formulæ. Nowhere does the bill allege that either of them knew the secret, if there was one. There is no description given in the testimony of the mechanism, construction

or methods of use of either the oxydonor or oxygenor instruments from which any clear idea can be formed of their parts and appearance. In the brief of plaintiffs in error is a picture of a "Perfected Oxygenor King," which appears to consist of a round cylinder or tube to each end of which a cord is fastened. At the other ends of the cords are round discs to which bands are attached, apparently to be fastened to some part of the person when in use. We get the impression the cylinder or tube is filled with some substance which is supposed to communicate, by means of the cords attached, certain effects to the body. To what extent this instrument is like the oxydonor we cannot tell from this record. Defendant in error himself testified that there was no secret in the filling of the instrument, but that it was simply a matter of scientific knowledge,—as he said, the same thing as the practice of medicine or law. It is impossible to tell from the proof in this record whether there is a great similarity between the oxydonor and oxygenor instruments, or whether there is a wide difference between them. The bill alleges that the oxygenor instrument was a close imitation of the oxydonor instrument, but no witness,—not even the defendant in error himself,—undertakes to describe their resemblance or tell wherein one is like the other. The nearest approach to any proof on this subject is merely as to the name. We are unable to say from this record that the oxygenor instrument was not as meritorious and manufactured and sold under as lawful right as the oxydonor instrument.

As in the view we take of this case defendant in error is neither entitled to an injunction nor an accounting, the judgment of the Appellate Court and decree of the circuit court will be reversed and the cause remanded to the circuit court with directions to dismiss the bill.

*Reversed and remanded.*